ALBANY,
Dec. 1831.

Reab
v.
McAllister.

</div>

---

### Reab *vs.* McAlister.

In an action for the recovery of the price of an article, sold with warranty of its goodness, or in relation to which there was a fraudulent misrepresentation, the defendant, on *notice given* with his plea, may give evidence of the fraud or breach of warranty in diminution of the plaintiff's claim.

The act of 1813 in relation to *set-offs* was broader than the act of 1801, and extended the right of set-off to *unliquidated demands arising on contract.*

A merchant or manufacturer whose uniform custom it is after a limited period of credit to charge interest upon articles sold or manufactured by him, *may charge interest* accordingly to those who are in the habit of dealing with him with a knowledge of such custom,

Where a general objection is made to the decision of a court on the trial of a cause, and on review thereof, the decision, if objectionable at all, is so only in part ; the party is not allowed to avail himself of the objection, for the want of precision in stating it at the trial.

Error from the supreme court. Reab sued McAlister in the common pleas of Washington county in an action of *assumpsit*. The declaration contained counts for goods sold and delivered generally, for a cooking stove and stove pipe sold and delivered, and a special count for a cooking stove sold the defendant at the price of $45, to be paid for in six months af-

ter delivery, which the plaintiff warranted to draw and carry
smoke well. The defendant pleaded the general issue, and
subjoined thereto a notice that as matter of defence, and in
bar of the plaintiff's claim to recover the value of the cooking
stove, he would prove on the trial a breach of the warranty
in relation to the stove. On the trial, the plaintiff proved the
sale and delivery of the stove at the price of $45, on a credit
of six months, and also proved an account for sundry other
items, amounting to a few dollars, and claimed *interest*. The
proof in relation to the interest was, that the plaintiff's custom
was to charge interest on his accounts after ninety days,
which was generally known. The plaintiff's books of account
were produced in evidence, from which it appeared that the
amount of his account against the defendant, exclusive of in-
terest, was $74,26, and that the interest on the same was
$11,80. It was also proved by two witnesses that the defend-
ant had admitted *all the items* charged in the plaintiff's account,
except a stove, pipe, dumb stove and wire appendages to the
stove. The defendant objected to the plaintiff's *right to re-
cover interest*, which objection was overruled; the defendant ex-
cepted and the plaintiff rested. The defendant then offered
to prove a breach of the warranty in relation to the stove, by
shewing that it would not draw and carry smoke, and was
unfit for use ; that he took it to the plaintiff and offered to re-
turn it, and that the plaintiff refused to receive it. This evi-
dence was offered, 1. As an offset of damages for the breach of
the warranty against the demand of the plaintiff; and 2. To
reduce the value of the stove ; fraud in the sale of the stove
was neither pretended nor alleged. The evidence was ob-
jected to by the plaintiff, and the court decided that it
was inadmissible as an offset, and that the sale being abso-
lute and unconditional for a stipulated price, and no fraud be-
ing alleged, the warranty and the breach of it could not be
received in evidence to reduce the price agreed upon. The
defendant excepted, and the jury, under the charge of the
court, deducting from the plaintiff's demand sundry charges
proved by the defendant, found a verdict for the plaintiff for
$65,61 damages, for which amount, together with costs, the
common pleas gave judgment. The supreme court reversed

this judgment, holding that the evidence offered was admissible in diminution of the amount claimed for the stove by the plaintiff. The plaintiff sued out a writ of error to this court. For a more full statement of the case, the arguments of counsel and cases cited by them, and the opinion of the court, see 4 Wendell, 483 to 494.

ALBANY,
Dec. 1831.

Reab
v.
McAlister.

The case here was argued by

*S. Stevens & B. F. Butler*, for the plaintiff.

*D. Russell*, for the defendant.

The following opinions were delivered :

By the CHANCELLOR. I do not think there was any error in the charge of the court of common pleas, in respect to the interest, which could render the judgment of that court erroneous. The plaintiff's demand consisted partly of a running account, and was partly for the price of the stove, sold on a credit of six months. It was in evidence that the ordinary custom of the plaintiff was to charge interest on his accounts after ninety days, where no specific time of credit was agreed upon, and that this custom was generally known. I also infer from the evidence, that the interest in this case was actually charged on the plaintiff's books, and it appeared by the testimony that the defendant had admitted the correctness of all the items charged in the account, except those which related to the stove and its appendages. On the trial, the defendant's counsel made a general objection to the plaintiff's right to recover interest, which was overruled by the court. As the stove was sold on a credit of six months, there could not be any possible doubt as to the right of the plaintiff to recover interest on that part of the account, after the expiration of the credit. The objection was general, that the plaintiff was not entitled to interests; as he was entitled to interest, at all events on the greatest part of the account, the objection was properly overruled. If the defendant wished to raise the objection to any other part of the account, he should have point-

ed his objection to that part particularly. The court charged the jury that the plaintiff was entitled to recover the amount of his account, including the stove ; the interest to be computed from the expiration of the credit. If there was any thing ambiguous in the charge, calculated to mislead the jury, the counsel should have called the attention of the court to it at the time, by a specific objection. *Ball* v. *Mannin*, 3 Bligh's R. N. S. 22. Indedendent, however, of the objection that the attention of the court does not appear to have been called to this particular point, I think there was sufficient testimony to authorize the jury to presume an agreement or understanding between the parties, that the defendant should pay interest on the account, after the expiration of the 90 days. Although as a general principle, running accounts do not draw interest, yet, if a merchant has been in the general practice of charging interest after a limited period of credit, those who deal with him with a knowledge of that fact are bound to pay interest from the expiration of such period ; and their liability is the same if they have been in the habit of settling their accounts with him, in which such interest has been charged and allowed. Here the custom was proved, and previous to the trial, the correctness of the account in which this interest appears to have been charged was not objected to by the defendant ; he only objected to the charges relating to the stove. It therefore becomes necessary to consider the question whether the defendant had a right to prove the warranty of the stove, and the breach thereof, either to defeat the recovery, or to reduce the damages.

I am inclined to think that under the revised statutes of 1813, which were in force when this suit was commenced, the defendant had a right to offset the damages for breach of the warranty of the stove against the plaintiff's account, although such damages were unliquidated. I am aware that in the case of *Hepburn* v. *Hoag*, 6 Cowen, 613, the supreme court came to the conclusion that the legislature did not intend to change the law by the alteration of the phraseology of the revised act of 1813 from that which was contained in the former statute. So far as related to the case then under consideration. it is evident the set-off could not be allowed. The suit was on

a bond for the performance of covenants, and the plaintiff was entitled to have his damages assessed on the breaches assigned, and to have judgment for the penalty of the bond to cover future breaches. It was therefore a case for which the statute of set-off had made no provision, and where a verdict could not be rendered against the plaintiff on the plea of *non est factum*, or for a simple balance in favor of the defendant without depriving the plaintiff of his remedy for future breaches. When the learned judge, who delivered the opinion in that case, used this peculiar case to show that the legislature in the revision of 1813 intended to exclude a set-off of unliquidated damages in all cases, I think it is evident he had forgotten the reasons which induced him as one of the revisors to adopt the change in the phraseology of the act of 1813. The cases cited by Chancellor Kent, in *Duncan* v. *Lyon*, 3 Johns. Ch. R. 358, were all decided under the act of 1801, or under the British statute, which was substantially the same; and that his attention was not called to the fact of the alteration in the revision of 1813, I think is evident from his own decision upon the construction of similar terms in the justices' act of 1801. The act of 1801, 1 R. L. of 1801, 347, authorized a set-off in courts of record, where two or more persons *dealing together were indebted to each other*, and provided also for the set-off of a bond for the payment of money only; but the justices' act of 1801, 1 R. L. 494, authorized and required a set-off by the defendant in a justice's court, of *any account or demand* which he had against the plaintiff. Under the first of these statutes, the supreme court decided that the words, having *mutual debts*, in the English statute, and *being indebted to each other*, in the act of 1801, were expressions of the same import and meaning; that our statute must receive the same construction which had been given to the English statute; and that there could not be a set-off in a court of record, where the demand on either side was for unliquidated damages. *Brown* v. *Cumming*, 2 Caines' R. 33. *Gordon* v. *Brown*, 2 Johns. R. 150. But Kent, Ch. J. who delivered the opinion of the supreme court in the last case, had previously decided that the words used in the justice act of 1801, *any account or demand against the plaintiff*, authorized and required

ALBANY,
Dec. 1831.

Reab
v.
McAlister.

the defendant to off-set any demand which he had against the
plaintiff arising upon contract, although such demand was for
unliquidated damages, *McCumber* v. *Goodrich*, 1 Johns. R. 56 ;
and the Chief Justice there points out the difference between
the two statutes, and shows that the term *demand* in the last
mentioned act requires a more extensive construction than
the terms used in the other statute ; and in the revision of the
justices' act in 1808, this construction was expressly adopted by
a proviso limiting the set-off to *damages arising on contracts* only.
5 Laws of N. Y., Webster's ed. 377. In the case of *Brown* v.
*Cumming*, before referred to, the court regretted the necessity
which compelled them to follow the English decisions in
giving a construction to the act of 1801, relative to set-offs
in courts of record, and Livingston, J. who delivered the opin-
ion of the court, although he admits it is a hard case, and
that reason and justice require that the balance only should
be considered the real debt, says the forms of law render it ne-
cessary for each party to sue the other in separate actions.
The legislature, who revised the laws in 1813, undoubtedly
viewed the reason and justice of the case in the same light,
and they therefore added to the words contained in the form-
er act the following : " *or have demands arising on contracts or
credits against each other.*" 1 R. L. of 1813, 515. As the words
used in the act of 1801 had received a settled construction by
the previous adjudications, it is hardly possible to conceive
why these additional terms should have been used in the re-
vision of 1813, unless the legislature intended to extend the
right of set-off in courts of record to *unliquidated demands aris-
ing on contract.* If it was competent for justices of the peace
and jurors in justices' courts to inquire into and settle two
claims of this description in one suit, it was equally competent
for a jury to do the same thing under the direction of the
judges of a court of record ; and when the legislature alter the
language of the statute by the addition of terms which had
been declared sufficient to authorize a set-off of unliquidated
damages by a former statute, I think we are bound to presume
they intended these terms should receive a similar construc-
tion in the new statute in which they had been thus incor-
porated.

As the *revised statute* have altered the law of set-off as to all future cases, both in justices' courts and courts of record, and have placed the set-off in both upon the same footing, it is unnecessary to pursue this question further. By the law of set-off, as established by the legislature in the recent revision, unliquidated damages for a breach of warranty on the sale of an article, cannot in any event be given in evidence in an action by the vendor for the price of the article, *simply as a set-off* under the statute. 2 R. S. 234, § 50, sub. 3. id. 354, § 18 sub. 3. The question, whether a breach to such warranty can be given in evidence in *diminution of damages* merely in such an action, becomes important in relation to cases which may hereafter arise ; and I prefer to put my decision in this cause upon that ground alone.

There is a natural equity, especially as to claims arising out of the same transaction, that one claim should compensate the other, and that the balance only should be recovered. This natural equity was by the civil law extended even to unconnected claims which were liquidated, or were capable of liquidation by mere computation. But the common law of England required that distinct and independent demands should be sued for by the respective parties in separate actions against each other. Before the statute of set-off, however, Lord Chief Justice Hale decided that where there were mutual claims between the parties on account of the same dealings, and one of them became a bankrupt, the other should only be holden for the balance due, and should not be compelled to pay the whole and come in for a dividend only for the claim due himself. See *Chapman* v. *Derby*, 1 Vernon, 117. There is also a class of cases where, by the common law, claims not coming within the statute of set-off may nevertheless be given in evidence, for the purpose of reducing the damages which the plaintiff might otherwise claim. Thus, in *Kist* v. *Atkinson*, 2 Cowp. R. 63, where the plaintiff claimed commissions on the purchase of a cargo of wheat which he had shipped for the defendant, it appearing on the trial that the defendant had previously sued the plaintiff and recovered for a breach of the contract in not shipping such wheat as had

been agreed upon between the parties, Lord Ellenborough said the plaintiff in the present suit might have given the facts in evidence in the former suit for the purpose of reducing the damages, and that the account was therefore closed between the parties by the former verdict. It appears also to be now well settled in England that where there has been a sale, either upon a warranty as to the goodness of the article sold, or upon a fraudulent misrepresentation of its value, if a suit is brought on the original contract of sale, the defendant may, upon notice of such defence given with the general issue, prove the fraud or breach of warranty in mitigation of damages. In some of the earliest cases on the subject, there was a conflict of opinion between Mr. Justice Buller and Lord Kenyon on this question; the former holding that the defendant must be driven to his cross action, and the latter insisting that the facts might be given in evidence to reduce the damages in the action on the contract of sale to recover the purchase money. *Carmack* v. *Gillis*, cited 7 East's R. 480. *King* v. *Boston*, id. 481, n. Lord Ellenborough and other English judges have subsequently followed the opinion of Lord Kenyon, and discarded that of Mr. Justice Buller. See Opinion of Lord Ellenborough, 1 Campb. R. 38; and of Lawrence and Le-Blanc, J., 7 East's R. 484. And in the recent case of *Poulton* v. *Lattimore*, 4 Man. & Ry. R. 208, 9 Barn. & Cres. 259, S. C. where the plaintiff brought his action to recover the contract price of 8 quarters of cinq-foin seed, which was warranted to be good new growing seed, the defendant, on a trial before Baron Garrow, was permitted to shew a breach of warranty, although he had not offered to return the seed, but had sowed part and sold the residue; and the court of King's bench on a subsequent application confirmed the decision made at nisi prius. This case, as well as that of *King* v. *Boston*, before referred to, are directly in point, and fully support the decision of the supreme court in the cause now under consideration, independent of the cases previously decided in the same court.

A distinction, however, has been taken by the English judges between a suit upon the original contract of sale, and a suit upon a note or other security taken for the contract price

on such sale. The cases cited by the plaintiff's counsel from the English reports are mostly of the latter description; and in all such cases it has been held that the whole amount of the note or other security may be recovered where there is no fraud, unless the warranty goes to the whole consideration. The case of *Thornton* v. *Wynne*, 12, Wheaton, 183, decided by the supreme court of the United States, was a case of that description; although the decision appears to have been put upon the simple question of the right of the purchaser to rescind the sale where there was a warranty, but no fraud. The cases of *Frisbee* v. *Hoffnagle*, 11 Johns. R. 50, *Beecker* v. *Vroman*, 13 id. 302, *Spalding* v. *Vandercook*, 2 Wendell, 431, and *Burton* v. *Stewart*, 3 id. 236, have followed the English decisions so far as relates to the question which arises in this cause; but they have not adopted the distinction between suits upon the original contract of sale, and suits upon a bill or note given for the purchase money, as to a partial or total failure of consideration. See also *Evans* v. *Grey*, 12 Martyn's R. 478. *Sample* v *Looney* 1 Overton's T. R. 85.

I consider the rule adopted on this subject perfectly just and equitable when the plaintiff has notice of the defence intended to be set up, and calculated to do complete justice between the parties, without putting them to the expense of two suits, where one is much more likely to effect the object of fair litigation. Indeed, if one of the parties is insolvent and the other responsible, it is the only way in which justice can be done; at least as to small demands, which will not bear the expense of a suit in chancery to obtain an equitable set off. Being perfectly satisfied with the correctness of the decision of the supreme court, I shall vote to affirm their judgment, reversing that of the common pleas.

By Mr. Senator ALLEN. Several exceptions were taken by the counsel for the defendant below to the proceedings in the common pleas. The first objection taken was to the introduction of the plaintiff's books of account as evidence. This probably would have been a good objection under other circumstances; but in the present case there was no necessity for the books, as sufficient proof was produced without them,

two witnesses having testified that the defendant admitted the correctness of all the items charged in the plaintiff's account, except the stove, pipe, and dumb stove and wire, (appendages to the stove,) and the purchase of them under the warranty was not disputed. An acknowledgement by the defendant of a debt due upon any account, or an admission of a debt upon a single article, will be sufficient to enable the plaintiff to recover. 2 Phil. Ev. 87.

The right of the plaintiff to interest on his account was also objected to. This objection, it appears to me, was entirely unfounded, as the credit on the stove was admitted to be six months, and the charge of interest after that time had expired was both just and proper ; and it was proved by the son of the plaintiff, who had always been his clerk, that he had uniformly charged interest on his accounts after ninety days credit, which custom the witness believed was generally known, and he had never heard any objections to it from those who dealt with the plaintiff. There was therefore an implied agreement that interest should be paid.

The defendant then offered to prove, that at the time of the purchase of the stove in question, the plaintiff warranted the same to draw and carry smoke well, and cook well ; that it did not draw and carry smoke well, and that it would not draw in any position in which the stove or pipe was placed, and that the defendant took the stove to the plaintiff and offered to return it, but he refused to receive it—this evidence was rejected by the court of common pleas. It is contended by the plaintiff on the one hand, that where there is an absolute sale of an article, at a stipulated price and time of payment agreed upon by the parties, there being no fraud on the part of the vendor, the vendee cannot, in an action by the vendor to recover the price thus agreed upon, set up a breach of warranty as a defence to the action, or to reduce the price agreed upon. On the other hand, it is insisted by the defendant that the evidence offered in the court of common pleas to prove a breach of the warranty, and to reduce the value of the stove, was improperly rejected, and that the supreme court were correct in reversing the judgment of the court of common pleas on that ground. I incline to the latter opinion, as it appears to me

that equal and complete justice could not be meted to the defendant without the admission of the testimony offered.

On the trial of the cause, the court of common pleas held, that where there has been an absolute sale of an article for a stipulated price, and no fraud is alleged or proved, although the article be warranted, yet that such warranty and breach of it cannot be given in evidence to reduce the price agreed upon; and the remedy proposed for the breach of warranty is a suit by the defendant to recover damages sustained by such breach. I am unable to see the necessity or propriety of two actions on a subject, when one is sufficient to settle the whole matter in controversy. There is nothing to be gained by such a course of proceeding, either by the plaintiff or defendant, except vexation and expense; and I hold it to be the duty of courts of justice, on all occasions, to use their best endeavors to lessen, as much as practicable, useless litigation among our citizens. In the case before us, there was no manner of difficulty in making a final settlement of the differences between the plaintiff and defendant, had the evidence offered by the defendant been permitted to go to the jury. The fact of the warranty could not be disputed, as the plaintiff in the fifth count of his declaration admits it fully, in the following words: "and that he, the said plaintiff, would also then and there undertake, and promise to and with the said defendant, that the said cooking stove last above mentioned would draw and carry smoke well;" and surely it was as competent for the jury then empanneled to decide what the damages sustained by the defendant were by breach of the warranty, as it would have been for a jury empanneled some months and perhaps years after the first trial. The plaintiff cannot complain that he had not due notice of the bad quality of the article, because, so soon as it was discovered, the defendant offered to return it.

In *King* v. *Paddock*, 18 Johns. R. 141, the plaintiff sold to the defendant a quantity of Leghorn hats, of certain qualities, for a certain price, and engaged to deliver extra crowns, to match those delivered, free of charge; but the crowns sent did not match the hats delivered, whereby the defendant sustained a loss; *held*, that though the defendant had not return-

ed or offered to return, the hats, she might, in an action brought for the price, nevertheless, insist on a deduction from the sum originally agreed to be paid, in proportion to the diminished value of the goods. This case, it appears to me, applies with sufficient force to the matter under consideration, to have authorized the admission of the testimony offered by the defendant below. What can be the difference, whether the purchase be hats or a cooking stove? the hats were not supplied according to contract, and therefore a loss was sustained: and the stove was not what it was warranted to be, and in like manner, loss was sustained; in both cases, therefore, in an action for the price, the defendants would have a right to insist on a deduction from the sum originally agreed to be paid, in proportion to the diminished value of the article.

In *Basten* v. *Butter*, 7 East, 480, the suit was for work done, and materials furnished. On the part of the defendant, it was offered to be proved, that the work was done in a very improper and insufficient manner; but it was insisted by the plaintiff that this was no answer to the action, for if the work was not properly done, it was the subject of a cross action by the defendant against the plaintiff. Le Blanc, justice, observed, that in either case, (a *specific sum*, or what he *deserved*,) the plaintiff must be prepared to show that his work was properly done, if that be disputed, in order to prove that he is entitled to his reward; otherwise, he has not performed that which he undertook to do, and the consideration fails. And I think it competent to the defendant to enter into such a defence, as well where the agreement is to do work for such a sum, as where it is general to do such work; and it is open to the defendant to prove that it was executed in such a manner as to be of no value at all to him, or not to be of the value claimed. In a note to this case it is observed, that the rule as now settled is, that if there be no beneficial service, there shall be no pay; but, if some benefit has been derived, though not to the extent expected, this shall go to the amount of the plaintiff's demand, leaving the defendant to his action for negligence. 7 East, 485. There is no difference in principle, that I can perceive, between the above case and the one under consideration; for, if the

stove was worth what it was sold for, the plaintiff ought to have been prepared to show the fact; particularly, as this was disputed, and as he had notice that it would be so disputed; but if he did not, or was unable to establish the fact, the defendant ought to have been permitted to show that it was of no value, or at least, not of the value claimed.

I am unable to conceive a case of the kind under consideration, that may not be settled by a single suit, and whenever that can be done, it ought to be done. In this case there was the purchase of an article upon certain conditions, and there is no good reason, that I can see, why those conditions should not have been permitted to be set out, and the whole matter settled, as well as to the amount of purchase, the terms of purchase, as the value of the article purchased, and thus have submitted to the jury the whole matter in controversy, for their decision. I think the judgment of the supreme court should be affirmed.

By Mr. Senator Todd. In the examination of this case I will in the first place inquire, whether, according to the settled doctrine of the law of *set off*, the evidence offered and rejected by the common pleas was admissible.

A set off was not allowed at common law. The right to a defendant to set off a demand he may have against the plaintiff is given by statute. The provision is most valuable, as by it such matters as are within the scope of the statute may be adjusted in a single suit. The statute, however, applies only to mutual debts existing between the parties. A debt, to be the subject of a set off, must be certain—the amount ascertained and liquidated. So long as a claim rests in damages only, it is not within the statute; it may furnish a good cause of action, but cannot be used as defence at law.

The case of *Duncan* v. *Lyon*, 3 Johns. Ch. R. 351, is an important one on this subject, and decides expressly, that unliquidated damages are not the subject of *set off*. A suit at law had been brought to recover damages from the defendant, for his refusal to perform his part of a contract in furnishing timber, provisions, &c.; the defendant wished to set off damages

which he claimed out of the same contract. Chancellor Kent says, the demand at law was in the nature of redress for a wrong or injury committed, and not for a debt due ; it rested entirely in uncertain and unliquidated damages. There cannot be a set off, even of a debt against the demand of the plaintiff, unless that demand be of such a nature that it could be set off by a defendant, if it existed in him. There must be mutual debts. This is the settled doctrine in the courts of law. The case of *Howlet, &c.* v. *Strickland,* 1 Cowp. 56, determines the same point. It was an action of covenant ; the defendant pleaded that he had sustained greater damages by reason of the breaches committed on the part of the plaintiff than the value of the damages sustained by the plaintiff, on occasion of the breach alleged in the declaration. There was a demurrer to the plea, because these damages could not be pleaded by way of set off. Lord Mansfield said, the act of parliament and the reason of the thing, relate to mutual debts only ; these damages are no debts. Aston, justice, said an unliquidated demand, or uncertain damages, cannot be set off. *Weigall* v. *Waters,* 6 T. R. 488, was covenant for rent, by the landlord ; the tenant was not permitted to set off uncertain damages arising from a breach of the covenants by the landlord in the lease on which the action for the rent was founded. Montague on Set-off, 20, 21. There must be mutual debts to be set off. The demand of the plaintiff and the demand of the defendant must be a debt. A set off cannot be pleaded to a debt on bond, conditioned for the performance of covenants, where damages are to be assessed by a jury, nor to an action for general damages in covenant or assumpsit. *Bornman* v. *Tooke,* 1 Esp. N. P. 278, was an action of assumpsit, for freight upon a cargo of timber. The freighter agreed to load his ship with the greatest expedition, and sail with the first fair wind, direct to Portsmouth : the ship arrived, and the cargo was delivered. The plaintiff brought his suit for the specific freight agreed upon. The defendant claimed damages, because the ship had not sailed direct to Portsmouth. It was held, that as there was a specific agreement for specific freight, the defendant should bring his cross action for any damages he might have sustained by the default of the plaintiff. In *Gordon* v.

ALBANY,
Dec. 1831.

Reab
v.
McAlister.

*Bowne*, 2 Johns. R. 155, it is determined that a set off cannot be permitted to a count on an open policy of insurance. A promissory note on the part of the defendant cannot be set off against a demand of the plaintiff, unless that demand be of such a nature that it could be set off by a defendant if it existed in him; to be set off, the demands must be mutual. In *Livingston* v. *Livingston*, 4 Johns. Ch. R. 292, it is said to be well understood that uncertain damages are not the subject of set off. In *Sherman* v. *Ballou*, 8 Cowen, 310, Chief Justice, Savage, speaking of a set off, says, the rule in a court of law is, that the cross demand to be set off must be *liquidated*, founded on contract, and one for which an action can be sustained at law. In *Watts* v. *Coffin*, 11 Johns. R. 494, it was held, that the violation of the covenant on the part of the grantor, to allow common of pasture, and of estovers, was no defence to an action for rent; and it was there said, that there never was a case of set off in equity where the damages proposed to be set off against a clear and certain debt were unliquidated, and depended upon an unsettled legal right of doubtful aspect.

These cases established the following positions, so far as legal adjudication may be regarded as settling controverted points: 1. That a demand, to be set off, must be liquidated; 2. That a matter can only be set off in a suit in which the plaintiff, if he was defendant, could set off his claim against the demand of the defendant, if he was plaintiff; 3. The respective claims must be mutual debts. If the case under consideration is tested by these rules, it will appear that the demand which the defendant offered to set off, does not fall under the first, for it was not liquidated, but damages, claimed upon an open unsettled warranty. It will also appear that if a suit had been brought on the warranty of the stove, that the account of Reab could not have been a proper subject of set off; and that there were no mutual debts between the parties to bring the case within the statute. I am therefore of the opinion that the defence offered was not available as a set off.

The same matter was also offered in bar of the suit, under a notice for that purpose. The statute permits a defendant to plead the general issue, and give notice, with the plea of any matter which, if specially pleaded, would be a bar to the suit.

ALBANY,
Dec. 1831.

Reab
v.
McAlister.

It was not pretended on the argument, that the damages aris-
ing from a breach of the warranty could be pleaded in bar;
but it was insisted that the evidence should have been receiv-
ed as a means of settling the matters in one suit, which other-
wise would require two; that the cause of action and the de-
fence offered, arose out of one transaction, and that it was
proper to have it all settled in a single suit; that a jury could
do perfect justice to both parties. If I was now at liberty so
to decide this cause as to effect that object, without regard to
authority, the convenience of such a course might prevail;
but looking at the law as I understand it, I cannot approve of
such a defence. If the claims of both parties, which arise out
of one agreement, as a matter of convenience, can be settled in
one suit, and such is the law, then the case of *Duncan* v. *Lyon*
was erroneously decided; for the claim of the plaintiff, and
the set off of the defendant, both arose out of the same con-
tract; each alleged that the other had failed to fulfil his agree-
ment. So, too, in the case of *Hawlet* v. *Strickland*, both par-
ties claimed damages for violations of the same agreement;
and it was there urged, that as the demand was for unliquida-
ted damages, the set off might be for the same; that no in-
convenience could arise, because the damages on both sides
arose upon the same instrument, out of one transaction, and
that but one suit would be necessary. So, too, in the case of
*Weigall* v. *Waters*, where the action was covenant for rent
by the landlord, and the tenant was not permitted to set off
uncertain damages arising from a breach of the covenants by
the landlord, and the lease. So, too, in the case of *Watts* v.
*Coffin*, where the action was covenant for rent, the defendant
was not permitted to set off his damages for the landlord's
breaches of the same covenant. So, too, in the case of *Born-
man* v. *Tooke*, the defendant was not permitted to set off his
damages for the plaintiff's violation of his engagement to sail
directly to Portsmouth, in a suit brought by the plaintiff for
the freight of that very voyage. It therefore appears to me
that whether the set off does or does not arise out of the
same transaction as the plaintiff's claim, cannot vary the case;
it must be a liquidated demand, and used as a set off, and can-
not be used as evidence in bar of the suit.

There is a class of cases where the defendant's claim for damages arises out of the same transaction with the plaintiff's claim, in which the defendant is permitted to avail himself of the circumstances by way of defence. This is a class in which there is a total failure of consideration; the defence goes to that whole claim, and it has long been the established rule here, that a total failure of consideration is a good defence; but any thing short of a total failure has always been held to be inadmissible, even in mitigation of damages, where the contract is not tainted with fraud. Where the contract is tainted with fraud, it is held to stand upon a different rule, the contract being void for fraud; if the defendant returns the property, he is held to be liable for its actual value, and not for the specific price, upon the ground of an implied promise to pay what it is worth; which implication arises from the retention and occupation of the property.

In this case no fraud is pretended; the contract for the specific price remains, and the plaintiff must be permitted to recover that price, unless the breach of warranty can be used in mitigation of damages. If the principle is established that damages arising from a breach of warranty may be given in evidence in mitigation of damages by him to whom the warranty is made, it must apply to all cases, and cannot be limited to those where the price of the article warranted is the subject of the suit. The cases to which I have referred settle (at least so it appears to me) the doctrine that the defendant can derive no advantage from the fact that his claim for damages arises out of the same transaction out of which grows the plaintiff's cause of action. It is upon the ground that the engagements of each party are wholly independent of the other; and in all executed contracts, it would seem to be reasonable that it should be so. An agreement to give a specific price, where the contract is executed by the delivery of the article sold, is wholly independent of a warranty upon the sale, and each party is liable to the extent of the violation of his engagements. If the doctrine for which the defendant in error contends shall be sanctioned, it will permit a defendant, when sued upon a promissory note, to mitigate the damages by shewing that the plaintiff has violated a warranty on the

sale of a horse, the covenants in a deed, or any other occasion has omitted to fulfil the engagements which he had made with the defendant. Indeed, all of these and the like matters may be used to mitigate the damages in a single suit, each to apply to the extent of the injury proved for each breach.

It has always been considered an object of great importance to narrow the points in controversy between parties, so as to confine the evidence and the attention of the jury to a single point, that the mind of the triers may not be embarrassed by the consideration of various matters at the same time. A special plea, containing the matters embraced in the notice in this case would be no answer to the declaration. If they could not be available to the defendant by way of plea, putting them in the shape of a notice does not make them so, the statute only permitting matters to be given in evidence under a notice, which, if pleaded, would be a bar to the suit. In any view which I have taken of this case, I cannot reconcile it to established principles, that damages arising from a breach of warranty without fraud can be given in evidence in an action of assumpsit for a specific price, which by the agreement the defendant was to pay. 18 Johns. R. 403. 3 Wendell, 236, 8. The case of *Mallard* v. *Hinde*, 12 Wheaton, 183, is so directly applicable that it appears to me decisive of the question. The defendant in that case offered to prove a breach of warranty on the sale of a horse, in mitigation of damages in a suit upon a note given for the same horse upon the sale thereof; there was no fraud. The judge, in delivering the opinion of the court, after reviewing the cases upon this subject, says, "*if the sale be absolute, the contract remains open, and the vendee is put to his action upon the warranty.*" In the case under consideration, the sale was absolute; the contract remains open, and the defendant must resort to his action to recover his damages for a breach of the warranty. The case of *Day &c.* v. *Nix*, 17 Com. Law R. 121, is also quite applicable. It is there said, a partial failure of consideration for a promissory note constitutes no ground of defence, if the quantum to be deducted on that account is matter, not of definite computation, but of unliquidated damages.

The case of *Poulon* v. *Lattimore,* 17 Com. Law R. 373, I do not consider as controlling this case. That was a suit for the specific price for some seed which had been sold. The evidence was that it was worth *nothing,* and the jury found a verdict for the defendant. The defence went to the whole consideration, and was properly admitted on the ground of failure of consideration. It is true, that in giving the opinion of the court, the judges go the whole length of saying, that in a case for a specific price, a breach of warranty is admissible in evidence to reduce the recovery. I know of no established principle that will sanction such a doctrine ; the plaintiff must recover the price or nothing ; he cannot recover on the general counts where there is a special contract, and if the suit is upon the special contract, this species of evidence drives him to a recovery, not upon the contract laid in his declaration, but upon a *quantum meruit,* without a count in the declaration for such a cause of action; it abolishes all distinction between special and implied assumpsits. The case decided in 12 Wheaton, by the supreme court of the United States, appears to me to conform to the long established rule upon this subject, and I am disposed to adopt it as the criterion by which this cause should be decided.

Another ground upon which it was contended that this defence was admissible, was that of avoiding circuity of action. That principle is only applicable where the defendant will be entitled to recover in a cross suit the precise amount which the plaintiff recovers against him. The case of a total failure of consideration is an example ; a covenant not to sue is another. The case of *Frisbee* v. *Hoffnagle,* 11 Johns. R. 50, was decided upon this ground. A note was given for the consideration in a deed for land sold ; the defence was that the vendor had no title to the land ; it was allowed to prevail, and it may well be put upon either ground—a failure of consideration or to avoid circuity of action. Unless the stove sold by the plaintiff was wholly useless and valueless, the defence to avoid circuity of action cannot prevail, and there is no such evidence, neither was any offered to shew that it was worth nothing. I apprehend the learned judge who delivered the opinion in the supreme court has not correctly applied the principle. He says that in

those cases where the damages arising from a breach of warranty in the sale of chattels have been allowed to be given in evidence by the defendant to reduce the amount of the recovery below the stipulated price, the decisions of the courts have proceeded upon a principle which has of late years been gaining favor and extending the range of its operations: such defence is admitted to avoid circuity of action. It may indeed avoid multiplicity of actions, but not upon the well known and established legal principle of avoiding circuity of action, which applies only where the defendant will be entitled to recover precisely the same amount from the plaintiff that the plaintiff recovers from him. 4 Viner's Abr. 533. 2 Starkie's Ev. 646. It is also said that a second litigation on the same matters should not be tolerated where an opportunity can be afforded by the first to do final and complete justice to the parties. This may be true and not support the decision of the court below; a suit for forty-five dollars agreed to be paid for the stove, is not litigating the same matter which necessarily must be litigated when a suit is brought for the breach of a warranty. If it had been said two matters may be litigated in the same suit where an opportunity is offered to do final and complete justice to the parties, without using the words, a second litigation of the same matters, it would precisely have applied to this case; for here are two matters, separate and distinct, which are offered to be litigated in the same suit, and for ought we know justice might be done. So it might in a suit for slander, if the defendant offered to reduce the damages by shewing that the plaintiff had committed an assault and battery upon him, an opportunity would be offered to do final and complete justice; but such an opportunity of doing justice I cannot suppose would justify the court in receiving such evidence. It is also said that in case of warranty, *mala fide* evidence may be given of the fraud and deceit to reduce the damages to the actual value of the property, and that no good reason is seen for not allowing it in case of warranty *bona fide*. The analogy I apprehend will not hold: in the one case there is no contract for a specific price, for the *mala fides* destroys it, and the plaintiff can recover only the worth of the property upon the common counts; in the other case the contract re-

mains upon which the plaintiff must recover or fail, for the plea only puts in issue the contract. The difference between the two cases is, that in one of them an agreement governs the recovery, in the other it is upon a *quantum meruit.*

From the examination which I have given this case, I have not been able to discover any legal ground upon which the evidence of breach of warranty could be received. However desirable it may be to avoid litigation, and to permit or compel parties to litigate more than one distinct matter in one suit, when those matters are different in their nature, I cannot consent to affect that object by judicial determination in opposition to what I consider to be the settled law of this state. I am therefore of the opinion that the judgment of the supreme court should be reversed.

On the question being put, *Shall this judgment be reversed?* *three* members expressed their opinions in the affirmative and *eighteen* in the negative. The members expressing their opinions in the affirmative were Senators FOSTER, TALLMADGE and TODD.

Whereupon the judgment of the supreme court was *affirmed.*