Sweetman *v.* Prince.

---

## SWEETMAN *vs.* PRINCE and others.

Although the rule is well setled that a purchaser of personal property cannot defeat a recovery for the price by showing that the property is owned by another, unless he has been ousted, or there has been a recovery by the true owner; yet there is this important qualification to the rule—that if the seller has been guilty of fraud or deceit, in the sale, proof of the fraud will defeat an action for the price, although there has been no ouster, nor recovery had by the true owner.

Thus, where a vendor of logs which he did not own, fraudulently concealed from the purchaser, his want of title thereto, and sold them as his own; *Held* that such concealment was a complete defense to an action for the purchase price, brought by his assignee.

Where a vendor is not the owner of the property sold, he is not entitled to have it returned, when he has been guilty of a fraudulent concealment or representation as to his title, as he would be if he were owner, and had been guilty of some other fraud in reference to the property.

Whatever may have been the rule under the old system of pleading, it should now be held that fraud as to title in the seller should bar his recovery of the price. *Per* MULLIN, J.

A jury is bound to take the law from the court, and can not disregard an instruction upon that subject, however erroneous it may be. If they find a verdict contrary to the instruction of the court, it is the duty of the court to set it aside.

Sweetman *v*. Prince.

APPEAL by the plaintiff from an order made at a special term, setting aside a verdict, and granting a new trial.

The complaint alleged that at the time of the making of the contract and agreement therein set forth, and for three years previous to the commencement of this action, the defendants were copartners, and were carrying on business as such at Rohr's mills, in the county of Lewis, under the name, style and firm of John M. Prince & Co., and that the said John M. Prince did, during the time aforesaid, reside at Rohr's mills, and carry on the business of the said firm as one of said firm and general agent, and had charge of their business; that the principal business of said firm was and is the manufacture and sale of lumber. That on or about the 1st day of February, 1859, the said John M. Prince entered into an agreement with Morritz Klotwig, which was substantially as follows, viz : The said Klotwig, upon his part, agreed to deliver upon the bank of the Beaver river, or in the channel thereof, a certain quantity of pine logs, then mostly cut by the said Klotwig, prior to the 1st day of May, 1859, and the said defendants, on their part, agreed to pay the said Klotwig for the said logs, upon the delivery of the same, or upon the 1st day of May, 1859, the sum of $300.   That the said Klotwig carried out all the terms and conditions of the said agreement upon his part, and did deliver all the said logs upon the bank of the said Beaver river, or in the channel thereof, prior to the 1st day of May, 1859, and thereupon notified the defendants of such delivery of the whole of said logs so contracted for as aforesaid, and that thereafter the said defendants, by the said John M. Prince and their servants and agents, accepted the said logs, and the whole thereof, and took possession of the same, and have sawed the whole or a greater part thereof into lumber, and have had and received the said logs, under the said agreement, and that the same were worth the sum of $300, which

sum the defendants agreed to pay therefor. That on or about the 24th day of June, 1859, the said Morritz Klotwig, for a valuable consideration, sold, assigned and transferred to this plaintiff all his right, title and interest in, to, and growing out of the said contract for the sale of logs and the delivery of the same, and all claims which he had against the defendants, and that the said plaintiff is now the lawful owner and holder of the said claims, and that the said defendants have not paid to the said Morritz Klotwig, or to the plaintiff, or to any other person for the use and benefit of either the said Klotwig or the plaintiff, any portion of the said sum of $300; but are now justly indebted to the plaintiff in the full amount thereof, with interest. Wherefore the plaintiff demanded judgment against the said defendants for the sum of $300, together with interest thereon from the 1st day of May, 1859, besides costs.

The defendants, by their answer, admitted the partnership between them, and the assignment by Klotwig to the plaintiff, of his pretended claim under the contract to the plaintiff; and denied every other allegation in the complaint.

The defendants, for further answer, alleged, that the said Klotwig occupied a saw mill above them on Beaver river; that in the spring of 1859 the defendants were cutting logs for their mill, several miles above the said Klotwig's mill, to be driven down said river to the defendants' mill, during the spring flood; that said Klotwig was cutting logs above his mill on said river, and below where the defendants were cutting their said logs, and said Klotwig had a few logs in his ponds, all of which the said Klotwig represented to the defendants he owned; that all the said logs were said, by said Klotwig, to be sufficient to make 75,000 feet of lumber; that the defendants and said Klotwig agreed that said Klotwig should mark with his mark, and put all the said logs into the river, so

Sweetman *v.* Prince.

they might all be driven down with the defendants said logs, during the spring flood; and that said Klotwig should drive them with the defendants' logs, aided by the defendants' men, down the said river, past his mill and over the falls near the same, and that when said logs should arrive below the said falls, said Klotwig was to be paid by the defendants the sum of $300. And the defendants alleged, that Klotwig did not mark the said logs, nor did he put into the river, to be driven with the defendants logs, more than about one half of the said logs so contracted by him to the defendants; nor did he assist to drive them; nor had more than about one half of said logs been delivered below the said falls, by the said Klotwig or by any person; but the balance still remained above said falls, scattered along the river, and a lage number still remained upon the bank of said river. That since the failure of said Klotwig to perform his agreement, as aforesaid, the defendants had only promised to pay him said money when said logs, and all of them, should have been delivered below said falls, as soon as possible, and after deducting a reasonable sum for damages.

The defendants, for further answer, alleged that all of the said logs represented by Klotwig to be his, and which he pretended to contract to the defendants, were cut, not upon the said Klotwig's land, but upon the lands of one LeRay, of which lands one P. S. Stewart was the agent for the owner, to take charge of, manage and sell. That the said Klotwig made an agreement with the owner of said lands to cut saw-logs in a grove of pine, at $3 per thousand feet, and the said logs cut in said grove, and the lumber made therefrom, were to remain the property of the said owner of the land till they should be paid for at the price aforesaid. And the defendants averred, that Klotwig had never paid, as aforesaid, for said logs, or any part thereof; and that said logs were, and always had

been, the property of the owner of said lands, and that the owner of said lands and said logs had made a claim upon the defendants for the same.

And the defendants, for further answer, alleged that, before the assignment of the pretended claim mentioned in the complaint, the said Klotwig had taken from out Beaver river, and sawed and kept a great number of the defendants' logs, which were reasonably worth from $50 to $75, and the said Klotwig had promised to pay the defendants such sum as said logs were fairly and reasonably worth, which the defendants prayed might be allowed as a counter-claim in this action.

The answer was put in issue by a reply.

The action was tried at the Lewis county circuit, before Justice MULLIN and a jury.

At the conclusion of the evidence, the defendants moved for a nonsuit, on the ground that the logs did not belong to Klotwig, but to Le Ray, at the time of the sale, which fact Klotwig well knew. The court denied the motion, and the defendants excepted.

The court charged the jury that, "if Le Ray asserted his title to the logs, and forbade the defendants' paying Klotwig, because he (Le Ray) was the owner, the plaintiff would not be entitled to recover."

The defendants' counsel requested the court to order a verdict for the defendants, on the ground that, by the proof, Klotwig did not own the logs, at the time of the sale; and he well knew the fact that Le Ray did own them. The court refused to order a verdict for the defendants, and the defendants excepted.

The jury rendered a verdict in favor of the plaintiff, for $86.

The defendants moved for a new trial, on the judge's minutes. Upon that motion the following opinion was delivered:

Sweetman *v*. Prince.

MULLIN, J. The only question presented by the defendants' counsel on the motion for a new trial is, whether or not the court erred in refusing to charge the jury that the title to the logs was in Le Ray, and not in Klotwig, and therefore the plaintiff was not entitled to recover. Mr. Stewart testified that he was acquainted with the place where the logs were, and that it was the land of Mr. Le Ray; that Klotwig came to him and wanted to buy the pine timber on said land, and he (S.) agreed to sell the timber to Klotwig, and when the logs were cut, Klotwig was to let him know, and he (S.) was to send and have the logs marked, and Klotwig was to come and settle. The logs were not to be moved till measured. Klotwig never notified him, and that subsequently the defendant Prince informed him (S.) that he had bought the logs of Klotwig, and Stewart forbade him to pay Klotwig for the logs. Stewart did nothing further toward asserting Le Ray's title to the logs; he was satisfied he would get his pay of either Klotwig or the defendants; Klotwig, since suit brought, had paid Stewart money, which he desired should apply on the logs; but Stewart did not consider the logs paid for. Klotwig testifies that he went to Stewart to buy some pine; he asked Stewart the price, who told him it was $3 per thousand feet, standing. He hired it chopped; there was no time of payment named; Stewart wanted to measure the logs; the timber was on a side hill and some logs slipped into the river, so they could not be measured. Klotwig was contradicted by Adams in several material matters testified to by him. Stewart is uncontradicted by Klotwig or any other witness. Indeed, Klotwig substantially concedes the facts as sworn to by Stewart. We are, then, to assume that by the agreement between Stewart and Klotwig the logs were to be measured and paid for before being removed; and that they were never measured, nor has the price been paid. Under this proof, the title of the logs never passed from

Le Ray to Klotwig. (*Ward* v. *Shaw*, 7 *Wend.* 406. *Andrew* v. *Dieterich*, 14 *id.* 31. *Rapelye* v. *Mackie*, 6 *Cowen*, 250. *Outwater* v. *Dodge*, 7 *id.* 85. *Fitch* v. *Beach*, 15 *Wend.* 221. *Covell* v. *Hill*, 2 *Seld*, 374.) If title did not pass, he had none to convey. He withheld knowledge of the nature of his want of title from the defendants, and was thereby guilty of a fraud upon them. In *Espinasse's Nisi Prius*, (2*d part*, 262,) it is said : The buyer may maintain this action (case for deceit) against the seller who so sells without any title to the goods of another, though he has never sustained any damage, or the true owner has not retaken them, or even sued him for them ; for the sale, under these circumstances, is itself an offense, and if he should want title, and the goods are retaken, he might be remediless and sustain a mischief. In *Case* v. *Hall*, (24 *Wend.* 102,) Justice Bronson says : There is no doubt, if the vendor fraudulently represents the goods sold to be his own, when he knows them to belong to a stranger, an action on the case lies to recover damages therefor, though the real owner has not retaken the property ; nor the vendee suffered any actual damage. By these it would seem that a representation must be expressly made, in order to render the vendor liable. See several of the cases cited by the learned justice in support of the proposition—an express allegation of ownership is shown. But I suppose that an express allegation of ownership is not essential, that it is enough if the vendor sells the property as his own, and that such sale is equivalent to a representation that he is owner, and the vendor is liable if he fraudulently conceals from the vendee his want of title. In 2 *Black. Com.* 451, it is said : " In our law a purchaser of goods and chattels may have satisfaction from the seller if he sells them as his own, and the title proves defective, without any express warranty for that purpose."

In 3 *Black. Com.* 165, it is said : " In contracts for sale it is constantly understood, that the seller undertakes that

the commodity he sells is his own, and if it proves otherwise, an action on the case lies against him to exact damages for the deceit."

In *Early* v. *Garrett*, (9 *Barn. & Cres.* 298,) Bayley, J., says: If a seller fraudulently conceals that which he ought to communicate, it will render the contract null and void. But the authorities establish that the concealment must be fraudulent. Littledale, J., says: It has been held that when a man sells a horse as his own, when in truth it is the horse of another, the purchaser cannot maintain an action against the seller, unless he can show that the seller knew it to be the horse of another at the time of the sale, the scienter or fraud being the gist of the action, where there is no warranty. (*Springwell* v. *Allen*, 2 *East*, 448, note *a*. 1 *Pars. on Cont.* 457 to 459, *and notes.*) In 2 *Esp. N. P.* 262, it is said, the gist of the action is the sale, knowing the goods not to be his own, for the declaration must be that he did it fraudulently, or knowing them not to be his own. It is therefore incumbent on the plaintiff to prove that fact, that the defendant knew the things sold not to be his own, at the time of the sale, for if the defendant had a reasonable ground to believe them to be his property, (as if he bought them *bona fide*,) no action will lie against him. In *Case* v. *Hall*, cited (*supra*,) Bronson, J., says: "There was no offer to prove fraud; a man may very well be mistaken as to his title, and we cannot therefore presume a knowledge of the defect. All the cases before referred to on this point, show the scienter to be material, and that it must be proved, affirmatively." Though the defendant occupied under a contract of sale, he may have honestly supposed he had a right to cut the timber, notwithstanding the law is otherwise. The case then comes to this: Is there proof of the scienter of Klotwig, so as to charge him with fraud in the sale to the defendants. He knew the terms of the sale, and he consequently knew that he had no title to the logs, until they were counted and

paid for. The question of fraud, as such, was not pre-sented to the jury; but the jury were charged, that if Le Ray owned the logs the plaintiff could not recover. The error was in not charging that the plaintiff did not own the logs, instead of leaving the question of ownership to the jury. There being no dispute as to the facts, the question was one of law, and not of fact, and should have been so treated; and I think I was in error, in submitting the question of ownership to the jury, and in not instruct-ing them that Le Ray, and not Klotwig, was the owner. A new trial must therefore be granted, with costs to abide the event.

The motion for a new trial was accordingly granted; and the plaintiff appealed to the general term.

*C. E. Stephens,* for the appellant.

I. The ground on which the new trial was granted was, that as Le Ray owned the land, and had contracted with Klotwig to cut and have the logs when he paid the price of the timber standing, and he had not paid, and Klotwig omitted to disclose the facts at the time of sale, the plaintiff could not recover, though the purchaser had not been evicted, or disturbed in his possession; had not paid, nor been called on for the pay by the owner, or suffered any loss whatever—though Klotwig was of unquestioned ability to pay—the owner had no fear of losing, and had received part payment of him. So that according to this ruling the defendants may escape the payment to either the plaintiff or Le Ray, who is not bound to look to them—may compel payment by Klotwig of the balance due, if any, and the defendants go free. When payment is made by, or enforced of Klotwig, this decision and the verdict and judgment consequent upon it, will be a final bar to the recovery of pay for the lumber. Because if the defendants can make this defense, without having been evicted or suffered damage, as suggested in the opinion,

there is an end of the vendee's liability to pay, though they never should be evicted, or called upon to pay by the owner. And what renders the principle more injurious and extraordinary is, that the defendants knew of Le Ray's claim, and when they attempted to settle with Klotwig, he proposed and they offered to take the amount out of the price of the logs—called the stumpage—and after all this, they absolutely promised to pay the plaintiff the amount, after he had bought the demand.

The principle is settled, that nothing short of actual eviction amounts to a total failure of consideration. (*See* 2 *Abbott's Dig. p.* 33 ; *Vibbard* v. *Johnson,* 19 *John.* 77 ; *Lattin* v. *Vail,* 17 *Wend.* 188; *Whitney* v. *Lewis,* 21 *id.* 131; *Tallmadge* v. *Wallis,* 25 *id.* 114, 116; *Loyd* v. *Jewell,* 1 *Greenl.* 359; *Lamerson* v. *Marvin,* 8 *Barb.* 9 ; *Winslow* v. *Buel,* 11 *How. Pr.* 373; *Tibbits* v. *Ayer, Hill & Denio's Sup.* 174.) The rule is the same in respect to personal as to real estate; except that on a covenant of title to real estate, the covenant is instantly broken, and an action lies, but without eviction or payment of incumbrance, the damages are only nominal. (2 *Abbott's Dig.* 310, *pt.* 78. *Delavergne* v. *Norris,* 7 *John.* 358. *Stanard* v. *Eldridge,* 16 *id.* 254. *Hall* v. *Dean,* 13 *id.* 105. *De Forest* v. *Leete,* 16 *id.* 122.) In such case, though the grantee may pay an outstanding incumbrance without waiting for an eviction, and recover what he has paid, if he sue before eviction, and without payment, he can have nominal damages only. Title in a third person is no defense in trover or replevin, unless the defendants claim under him. The defendants have no defense, unless they have sustained damages by the breach of warranty. Had Le Ray made a claim, they might, perhaps, at their peril, have paid him, and only diminished the recovery so much. Otherwise the purchaser of timber standing, its value enhanced fifty fold, by its being converted into lumber, selling it at its enhanced value, would lose the whole, and his vendee pay nothing, either to the

owner or vendor. Suppose one sells a horse for $100, which he has purchased conditionally when a colt, at $5, the purchase money remaining unpaid. The non-disclosure of this fact would, according to this decision, deprive him of the purchase price, though the owner never made any claim, or if he should claim, and the vendee should pay the $5, still the vendee would hold the property, for that sum, though it was worth $100, or $1000. This illustrates the rule requiring eviction, and the injustice of that laid down in the opinion in this case.

III. The answer does not permit this defense. The only ground of setting aside the verdict is, the alleged fraudulent concealment of Le Ray's claim. The opinion admits that without that element the defense could not stand. That element is not in the answer—is not presented in this case—and yet a new and complete defense is thus allowed.

IV. If fraud could be alleged, then no action or defense could be maintained, by a vendee, except upon a repudiation of the contract and return of the property. (*Masson* v. *Bovet*, 1 *Denio*, 69. *Boughton* v. *Bruce*, 20 *Wend.* 234. *Wheaton* v. *Baker*, 14 *Barb.* 594. *Baker* v. *Robbins*, 2 *Denio*, 136.) And again, the jury would seem to have allowed for the very claim of Le Ray.

*C. D. Adams*, for the respondents.

I. The following errors arose upon the trial of this cause; and the order for a new trial was the appropriate remedy for their correction : 1. The verdict was against evidence. The defendants' witnesses were nowhere impeached or contradicted. Where the witness is unimpeached, and his evidence is intrinsically probable, neither the court nor the jury can disregard it. (1 *Cowen*, 109.) 2. The nonsuit should have been granted. If a verdict would be against evidence, a nonsuit should be ordered. (1 *Gra. & Wat. on New Trials*, 279, 280, 690. 8 *Mass.* 336.

1 *Wend.* 376.) 3. The evidence of Mr. Stewart was like an undisputed fact in the case ; no question arose upon it for the decision of the jury. The court should have disposed of the case upon the law, and have ordered a verdict for the defendants.

II. The sale by Klotwig of the logs in question to the defendants—when he knew they were not his, but Mr. Le Ray's—was such a fraud as furnishes a good defense in this action. It is submitted that the opinion given by the learned justice upon granting the new trial in this action, is a correct and true exposition of the law.

*By the Court,* MULLIN, J. It is not necessary to cite authorities to show that a purchaser of personal property cannot defeat a recovery for the price by showing that the property is owned by another, unless he has been ousted, or there has been a recovery by the true owner. But there is this important qualification of the rule—that if the seller has been guilty of fraud or deceit in the sale, proof of the fraud will defeat an action for the price, although there has been no ouster nor recovery had by the true owner. (*Case* v. *Hall,* 24 *Wend.* 102, *and cases cited.*) The plaintiff's counsel has not referred us to any case holding that the rule is not as I have stated it. But he complains that the cases referred to by me do not sustain the proposition in support of which they are cited. Let us examine them, and see whether they do not fully sustain it. In *Case* v. *Hall,* (24 *Wend.* 102,) the proposition is stated in the head note, by the reporter, as having been decided in it. It is true the facts proved did not make out a case of fraud, yet the counsel argued it on the theory that facts were proved which authorized the inference of fraud. And the court is called upon to declare its opinion upon the legal question involved. *Bucker* v. *Vrooman,* cited in the preceding case, holds that fraud or deceit on the sale may be insisted on by way of defense

to an action for the price.    (*See also Sill* v. *Rood,* 15 *John.*
230 ; *Reab* v. *McAlister,* 8 *Wend.* 109.)    In these cases the
fraud is admitted, by way of defense, to avoid circuity of
action.    In *Early* v. *Garrett,* (9 *Barn. & Cres.* 928,) the
action was by a purchaser of land, to recover of the vendor
the purchase money, because of concealment, by the latter,
of a fact which ought to have been communicated.    There
was some evidence to show that the defendants did not
know of the existence of the fact which it was alleged they
had concealed, and hence it was not fraudulent ; and the
court held, that without fraud they were not liable to re-
fund.    In thus holding, they must have held the converse
of the proposition, that if they had known the fact and
fraudulently omitted to communicate it, they would have
been liable.    The remarks of Bayley and Littledale, Jus-
tices, were entirely appropriate to the case then in hand,
and which applies directly to this.    In *Early* v. *Garrett,* the
possession of the land had been taken, by the landlord,
from the plaintiffs, but that fact had no bearing on the
question decided by the court.    There being no warranty
by the defendants, express or implied, there could be no
recovery, except for the fraud.    The cases cited in the note,
*Williamson* v. *Allison,* (2 *East,* 448,) are expressly in point,
and are recognized by this court in *Case* v. *Hall,* (cited
*supra,*) as authority.    In addition to these cases, the cases
cited by the counsel distinctly recognize the same princi-
ple.    In *Tallmadge* v. *Wallis,* (25 *Wend.* 107,) the chancel-
lor distinguishes the case from one in which the vendor
had been guilty of fraud or deceit in representing the title
to be different from what it was in fact.    In *Lattin* v. *Vail,*
(17 *Wend.* 188,) the court held that it is no defense to an
action on a note given on the purchase of land covenanted
to be free from incumbrance, that it was incumbered by a
mortgage.    But they say that they thus hold, there being
no fraud in the case.    In *Whitney* v. *Lewis,* (21 *Wend.*
131,) it is held that it is no defense to an action on a bond

Sweetman *v*: Prince.

given for the price of land, in the deed of which the vendor covenanted for quiet enjoyment, that the grantor was not seised in fee and had no right to convey, if there be no allegation of any fraudulent representation on the part of the plaintiff in respect to the title.

I think we may assume, for the purposes of this case, that if the vendor of the logs fraudulently concealed from the defendant the want of title, this concealment is a complete defense to the action. But it is said by the counsel that if it is true that the defendants might repudiate the sale, by reason of the fraud, they could only do so upon returning what they have obtained through the sale. Assuming, for the purposes of the argument, that fraudulent representations or concealment, in regard to the title, stand on the same footing with fraud committed by a vendor having a perfect title, there is this answer to the suggestion in this case. The defect of proof was not suggested on the trial, and we cannot say but that, if made, the proof would have been supplied.

But it seems to me that where the vendor is not the owner of the property sold, he is not entitled to have it returned, when he has been guilty of a fraudulent concealment or representation as to his title, as he would be if he were owner, and had been guilty of some other fraud in reference to the property; and one very conclusive reason is, that the purchaser is himself liable to the true owner for the value of the property, having had it in his possession and use. It is not uncommon that the property purchased may have been sold or consumed, so as to render it impossible for the vendee to return it; and if he cannot recover his purchase money of his vendor without a return, he is compelled to trust to the solvency of the seller, and at the same time be subject to an action for the value, to the true owner. I am free to say, I find no case authorizing the exception, yet it seems to me to be a reasonable and just one. It is true that the injured party

is at liberty, in such case, to sue for the damages actually sustained, without returning the property, and he may, on being sued, reduce the recovery for the price by the amount of damages sustained. But when there is no title in the vendor suing for the price, the damages to the vendee are the whole purchase money and its interest. Why, then, stand on a question of pleading? If the purchaser, by reason of the fraud, may sue for his damages without returning the property, and those damages can be no less than the money paid, why not permit him to recover the money thus paid, or to bar the action for the price, on proof of the fraud. Whatever may have been the rule under the old system of pleading, it should now be held that fraud, as to title in the seller, should bar his recovery of the price. It is said that great hardship will result from the rule applied in this case; that property purchased conditionally, for a small sum, may be so increased in value by the labor of the purchaser that if a sale by him for the enhanced value may be defeated because the small sum agreed to be paid by him has not been paid, injustice would be done him, and particularly so when no recovery over by the true owner has been had.

The answer to all this is, that the injury is the result of his own wrong. Had he acted in good faith, it would not have occurred. Again, by his unlawful act he has led the purchaser from him into a position where he is liable to the full value of the property to the true owner, even in its improved condition.

It is also objected by the plaintiff's counsel, that the matter of defense now insisted on was not set up in the answer. In granting the motion for a new trial, I held that, on the facts set out in the answer and proved, deceit in the sale was made out. The agreement between Klotwig and LeRay was, that Klotwig should pay $3.00 per thousand feet for the trees, standing, and the logs were to remain LeRay's until paid for. Klotwig was to call on

Sweetman *v.* Prince.

Stewart and have them measured, and instead of doing so he sold them to the defendants. On these facts there is no room for misunderstanding. Klotwig knew he was not the owner; he concealed the fact, and sold them as his own. There is no conflict of evidence. What was there for the jury? Had they found that there was no fraud, would not their finding be against evidence?

But there is still another ground on which it was my duty to have set aside the verdict. The jury was instructed that if LeRay asserted his title to the logs and forbade the defendants' paying Klotwig, because he (Le Ray) was the owner, the plaintiff could not recover. On each and all of these points there was no dispute, and it was the duty of the jury to have found for the defendants; and omitting to do so, there is no remedy but to set aside the verdict. It was not, perhaps, proper to have submitted the question to the jury, but it should have been disposed of as a question of law; yet that does not relieve the jury from its duty to conform to the instruction. It may be that the legal proposition laid down to the jury was not correct. With that it had nothing to do; it must take the law from the court, and cannot disregard its instruction, however erroneous it may be.

It is for these reasons, mainly, that the new trial was granted.

Order affirmed, on the ground that the verdict was against the instruction of the court.

[ONONDAGA GENERAL TERM, April 1, 1862. *Mullin, Morgan* and *Bacon,* Justices.]