## HOLBROOK & FERME *vs.* THE RECEIVERS OF THE AMERICAN FIRE INSURANCE COMPANY.

Where a party who had obtained a loan from an insurance company upon bond and mortgage, and who had also insured his property with the same company, which property was destroyed by the great fire in New-York ; by which fire the company was rendered insolvent, and receivers of its effects were appointed under the act of the 18th of January, 1836 ; and such receivers, for the purpose of depriving the assured of his legal right to set off the amount of his loss against the amount due from him to the company on the bond and mortgage, refused to adjust the amount due him upon the policy, as required by that act ; *Held* that it was the duty of the receivers to allow the set off ; and that the court of chancery, upon a summary application, was authorized to order the receivers to allow the same.

A receiver of an insolvent corporation, appointed under the act of the 18th of January, 1836, or appointed by the court of chancery under the provisions of the revised statutes relative to proceedings against corporations in equity, is bound to offset a liquidated debt due to the corporation, against an unliquidated debt due from the corporation to the same person ; in the same manner as trustees of insolvent debtors are bound to offset cross demands arising from mutual credits as well as from mutual debts. In such cases the right of set off is not confined to liquidated debts or to such as might have been offset in a suit at law between the original parties ; but it also extends to all mutual credits, arising *ex contractu*, between such original parties.

November 15.    THIS was an appeal from a decision of the vice chancellor of the first circuit upon an application for instructions to the receivers of the American Fire Insurance Company of the city of New-York to allow the appellants' set off. The facts of the case, as stated in the appellants' petition to the vice chancellor, were as follows : Holbrook and Ferme, the appellants, were formerly general partners as merchants in New-York, and as such effected an insurance upon their goods, with the American Fire Insurance Company, to the amount of $8000, for one year. A few months afterwards, by an arrangement between the parties, Holbrook became the sole owner of the stock in trade, and the policy was so modified as to apply to his new interest in the goods. In March, 1835, the policy was renewed for the amount of $6000, for one year, for the sole benefit of Holbrook ; and by the great fire, in December, 1835, the goods of Holbrook, exceeding in value the sum underwritten by the policy, were

destroyed, and by the same fire the insurance company was rendered insolvent. In January, 1833, Holbrook obtained from the insurance company a loan of $4000, for which he gave a mortgage upon his real estate, and Ferme joined with him in a bond to the company as a collateral security for the payment of the amount of the loan, with interest; and in April, 1835, Holbrook also borrowed from the company the further sum of $4000, for which he gave his bond and mortgage, to secure the repayment, with interest, in one year. Soon after the loss, Holbrook made due proof thereof to the officers of the company. He afterwards applied to the receivers of the effects of the company, appointed under the act of the 18th of January, 1836, to adjust his claim under the policy, and to allow it to be offset againt the bonds and mortgages. No objection to the validity of his claim was made by the receivers; but they refused to adjust the loss and give him a certificate of the amount, as required by the third section of the act, as they wished to prevent him from offsetting the loss against the amount due on his bonds and mortgages to the company. And they subsequently brought a suit against him and Ferme upon the bond given for the payment of the first loan of $4000. Holbrook and Ferme thereupon presented their petition to the vice chancellor for an order directing the receivers to allow the set off, and to cancel the bonds and mortgages upon receiving the balance due thereon beyond the $6000 underwritten on the policy. The vice chancellor decided that as the amount payable under the policy was unliquidated, there was neither a legal nor an equitable right of set off, and that Holbrook, therefore, must pay the amount of both mortgages, and take only his rateable proportion of the effects of the insolvent company.

The following is the vice chancellor's opinion:

McCoun, V. C. The only important point in controversy in this case is, with respect to the right of set off. In another case, against the receivers of the Globe Insurance Company, I have just had occasion to examine the question

1836.

Holbrook
v.
Receivers of
the American
Fire Ins. Co.

of set off both at law and in equity, where the company held the bond and mortgage of the parties whose building upon the mortgaged premises the company had insured, and a loss to the whole amount of the sum insured was sustained by the destruction of the building, and where the loan of money upon the bond and mortgage and the making of the insurance upon the building were parts of the same transaction. In such case (a loss to the full amount insured being admitted) I consider the assured entitled to have the loss deducted or set off against the bond and mortgage debt, notwithstanding the securities have passed into the hands of receivers and may be sued in their names; the receivers, like assignees in bankruptcy, taking subject to all the rights and equities existing against the company. (1 *Paige* 445.) But the present case is somewhat dissimilar, for here there is no connexion between the insurance on the stock of goods and the lending of the money on the bond and mortgage. They are not parts of the same transaction, and the court cannot infer from the circumstances any implied or tacit understanding that the money lent on the security of either of the bonds and mortgages should be held to meet the loss, if any, upon the policy on the goods. It might be otherwise if a loss had occurred upon the policies on the buildings forming a part of the mortgage security; and from an implied agreement in such a case, a stronger equity to a set off or compensation might possibly be urged. (*See* 8 *Wend.* 115, and 5 *Mason's Rep.* 208.)

But the great obstacles in the way of setoff in the present case are these: 1st, that with respect to one of the bond debts, it is the joint debt of Holbrook and Ferme, and the demand claimed to be set off belongs to Holbrook individually; and 2dly, that the set off claimed upon the policy of insurance is of an *unliquidated* demand in point of amount, and not capable of being ascertained by calculation, and therefore not admissible under the statute. (2 *R. S.* 354.)

The first of these objections may be obviated perhaps by a reference to ascertain how the first loan was made, whether to Holbrook alone, he procuring Ferme to unite with him

in the bond merely as surety, or whether they were jointly borrowers and both principal debtors as the bond imports.

If in point of fact Holbrook was the borrower on his own account exclusively, and the other executed the bond as surety only, then upon the authority of *Ex parte Hanson*, before Lord Erskine, (12 *Vesey*, 346,) and S. C. subsequently before Lord Eldon, (18 *Vesey*, 232,) a set off in favor of Holbrook may possibly be allowed in equity, though not at law. (*See* 4 *John. Ch. Rep.* 15.) A decisive opinion on this point ought not, however, to be expressed, until the fact alleged in the petition, and controverted in the answering affidavit of the receivers, is ascertained; and if the other objection to the set off, viz. the unliquidated nature of the demand, is got over, then, before denying the set off against the first bond on account of its being the joint debt of the two obligors, I should feel warranted at least in handing the matter over to a master for inquiry. As to the nature of the debt or demand offered by way of set off, it appears to be well established, that a court of equity is governed by the same general rules as a court of law.

A claim or demand arising from tort or upon contract, sounding in damages not ascertained, uncertain, unliquidated in amount, and from its nature in these respects not the subject of a set off at law under the statute, is equally inadmissible as such in this court. (*Duncan* v. *Lyon*, 3 *John. Ch. Rep.* 351.) The demand to be set off must be one arising upon judgment, or upon contract express or implied, either for real estate or personal property sold, or for money paid or services done; or if it be not such a demand, the *amount* must be *liquidated* or *be capable of being ascertained by calculation*. (2 *R. S.* 354, § 18, *sub.* 1, 3.) As the demand in the present case upon the policy of insurance is one arising upon contract, it so far comes within the statute, but it is neither for real or personal property sold, nor for money paid or services rendered; it must be, therefore, a demand, the amount of which is liquidated, or ascertainable by calculation.

The term liquidated in the statute, must be understood in its popular sense *settled, adjusted,* reduced to a certainty in

amount ; requiring the assent or concurrence of both parties. Now it is very evident the loss has not been thus liquidated. The assured produced proofs of his loss, preparatory to an adjustment of the amount, but neither the officers of the company nor the receivers ever adjusted it with him or fixed upon any sum to be paid. On the contrary, they appeared to have purposely abstained from doing so. How then can it be considered a *liquidated demand?* A policy of insurance against loss or damage by fire is necessarily an open policy, although a sum certain is specified in the policy as the amount insured. If a loss occurs, all that the insured is entitled to is indemnity to the extent of his loss, not exceeding the sum insured. The loss may be greater or it may be less, according to the value of the property destroyed. This is matter of proof and adjustment, and until it is adjusted and the amount of loss agreed upon or admitted by the underwriter, the claim or demand upon the policy remains *unliquidated.* In *Gordon* v. *Bowne,* (2 *John. Rep.* 150,) it was held that a claim upon an open policy of insurance against marine risks, even for a total loss, was of this nature, and could not be the subject of a set off under the statute as it then existed in the revision of 1801 ; and although by the subsequent revision of 1813, *unliquidated* demands might be set off, as has been clearly shewn in the opinions of Chancellor Walworth expressed on more than one occasion, yet by the present revised statutes we are brought back to the law of 1801, under which *Gordon* v. *Bowne* was decided, which is substantially the English statute of set off. (*Reab* v. *McAllister,* 8 *Wendell,* 109. *Butts* v. *Collins,* 13 *Wendell,* 139.) In *Butts* v. *Collins,* his honor, the chancellor, treats a demand as uncertain and unliquidated in point of amount, (and of course inadmissible as a set off,) where the defendant claimed the value of a certain number of pieces of flannel, which had been put into the plaintiff's hands to be dressed and which had never been returned to him—the number of yards in each piece and the worth per yard all being proved. Mr. Senator Maison takes a different view of the subject, and explains what he considers are unliquidated, and what are liquidated demands—drawing the line

of distinction, and concludes that the claim there set up for the flannels by way of set off, was one which could be ascertained by arithmetical calculation, and therefore admissible. His opinion, however, did not prevail—a majority of the court appear to have concurred with the chancellor, and I am bound to follow his views of the law. This, then, must be regarded as a case of an *unliquidated* demand. But there is another branch of the question—if not yet liquidated, is the amount capable of being ascertained by calculation, for if so, it is still admissible under the statute?

The case of *Osborne* v. *Etheridge*, (13 *Wendell*. 339,) I think settles this point; for the opinion of the court by Chief Justice Savage, gives to that phrase of the statute a construction which restricts the operation of ascertaining or calculating the amount of the demand to be setoff, to the use of *figures*, to a mere *arithmetical* calculation; and that where resort must necessarily be had to the testimony of witnesses or evidence of any kind, to be weighed and passed upon by the court and jury in order to ascertain the amount of the claim or demand, the party must be left to pursue his remedy for it in a distinct action. The amount of the claim upon the policy of insurance in question, cannot be ascertained by the above method of calculation. If the sum mentioned in the policy, like that of a bill, a note or a bond, was the amount payable upon the happening of a loss by fire, without regard to the extent of such loss, then indeed it would be a liquidated amount, or one ascertainable by mere calculation, for nothing would remain except to compute the interest, if any, and add the principal and interest together. But more remains to be done— proofs are to be gone into to establish the fact of loss of goods, and the assured's ownership of such goods and their value—the *exhibition* of preliminary proofs and a particular compliance with all the terms and conditions of the policy. Under these circumstances the demand cannot be the subject of a set-off at law; and this court can go no further than a court of law in enforcing such a right. The receivers appear to have a legal advantage, and the equity of the creditors generally, in whose behalf they act, is equal at

1836.

Holbrook
v.
Receivers of
the American
Fire Ins. Co.

1836.

Holbrook
v.
Receivers of
the American
Fire Ins. Co.

least to that of the petitioners, and it is not for this court un-der such circumstances to interfere.

From this decision Holbrook and Ferme appealed to the chancellor.

*C. O'Connor*, for the appellants.

*J. J. Rosevelt*, for the receivers.

THE CHANCELLOR. There can be no doubt as to the right of this court, upon a summary application, to direct the receivers to make the set off claimed in this case, if it is just and equitable that such set off should be allowed; and to stay the proceedings in any suits at law which may have been commenced upon the bonds given to the company. Independent of the general jurisdiction of the court over the receivers as officers of the court, a general power to direct and control receivers of insolvent corporations in reference to the dsicharge of their duties, is expressly given to the court by the provisions of the revised statutes. (2 *R. S.* 464, § 41. *Idem,* 472, § 85.) And by the act of January, 1836, under which these receivers were appointed, they are made subject to all the obligations and duties which are imposed upon receivers under any law of this state; and the same jurisdiction is given to this court over them as over receivers in other cases. The sixth section of that act, which authorizes the court of chancery to restrain all proceedings against the corporation, either at law or in equity, shows also that the legislature intended that the le-gal and equitable rights of the creditors of the corporation should be adjusted in a summary manner under the direc-tion of this court. If the vice chancellor has erred in rela-tion to the legal or equitable rights of these petitioners, they are right, therefore, in supposing that their proper remedy was by an appeal to the chancellor.

The vice chancellor arrived at a correct conclusion that in ordinary cases, an unliquidated claim for loss upon an

open policy of insurance cannot be offset, in a suit at law brought against the assured, by the underwriters, for the recovery of a debt due from the former to the latter. (2 *R. S.* 354, § 18, *sub.* 3. *Gordon* v. *Bowne*, 2 *John. Rep.* 150. *Butts* v. *Collins*, 13 *Wendell*, 139.) As a general rule, also, in cases of set-off, arising under the general provisions of the statutes on the subject, and where the demands which are sought to be set-off against each other arise out of separate and distinct transactions or contracts, courts of equity follow the legal rules of set-off which are applicable in suits at law; unless there are specal circumstances to take the case out of the general rule, and to show that the parties could not obtain their just and equitable rights by cross actions. (*Harvey* v. *Wood*, 5 *Mad. Rep.* 459. *Duncan* v. *Lyon*, 3 *John. Ch. Rep.* 351.)

In the case under consideration, however, even if Holbrook's right of set-off depended upon the general provisions of the revised statutes on this subject, I think he has shown sufficient to authorize and require the equitable interference of this court to compel the receivers to adjust and liquidate the amount due to him from the insurance company under his policy, and to apply by way of set-off, so much of that amount as may be necessary to satisfy the last bond and mortgage executed by himself alone. It is a natural equity, where there are cross demands, that one debt should compensate the other, and that the balance alone should be paid by the party who owes the largest debt; and it is a rule of convenience merely which limits the legal offset to liquidated debts, or to those which are capable of liquidation by computation only. It would, therefore, in an ordinary case, be not only inequitable but unconscientious for an insolvent debtor to refuse to liquidate an honest debt due to one of his creditors, as to which there was in fact no doubt or dispute, for the sole purpose of depriving such creditor of the benefit of his legal right of set-off; and thus to enable the insolvent to collect a liquidated debt due to himself from such creditor, for the purpose of paying other creditors with the money thus collected. And that which would be unjust and unconscientious if done by the insolvent himself, cer-

1836.

Holbrook
v.
Receivers of
the American
Fire Ins. Co.

tainly cannot be equitable and right when done by the offi-
cers of a court of equity who have succeeded to the rights
and duties of the insolvent; especially if done, as in this
case, by the palpable violation of a duty imposed upon them,
as such officers, by the provisions of the statute under which
they are appointed. The third section of the act of Janua-
ry, 1836, makes it the duty of the receivers as soon as they
shall ascertain the amount of any claim against the corpo-
ration, to give a certificate thereof to the claimant. And
as there was no reason to doubt, in this case, that Holbrook
had in fact sustained a loss to the extent of the $6000 cov-
ered by the policy, it was not only inequitable, but was a
neglect of a positive duty on the part of the receivers, to
refuse to liquidate the amount due to him, as required by
the statute, for the sole purpose of depriving him of the
power to set-off the same against the debt due from him on
his bond and mortgage; and thus to enable them to collect
such bond and mortgage for the benefit of the general cred-
itors of the insolvent company. If this claim had been ad-
justed by the receivers according to the directions of the
statute, the sixty days allowed by the policy for the pay-
ment of the loss would have expired before Holbrook's sep-
arate bond and mortgage fell due, and would therefore have
been a good legal offset in any suit which might have been
brought against him on that bond and mortgage.

Independent, however, of the general proivsions of the
revised statutes relative to set-off, I think this was a case of
mutual credits, which made it the duty of the receivers to
allow the offset under certain special provisions of the re-
vised statutes, which are made applicable to this case by
the act of January, 1836, under which these receivers were
appointed. The 36th section of the article of the revised
statutes relative to the powers, duties and obligations of
trustees and assignees of the estates of non-resident, ab-
sconding, insolvent or imprisoned debtors, (2 *R. S.* 47,)
authorizes a set-off of cross demands, where mutual credits
had been given, as well as where mutual debts existed, be-
tween the absent, insolvent, or absconding debtor and any
other person; and where the debt or claim of such other

person is of such a nature as to entitle him to a dividend of the estate of the insolvent or absentee. This provision is made applicable to the receivers of an insolvent corporation, by the 42d section of the article of the revised statutes relative to proceedings against corporations in equity, (2 *R. S.* 464,) and by the 72d section of the article relative to the voluntary dissolution of incorporations. (*Idem*, 469.) The 42d section gives to the receiver appointed by this court, upon an adversary proceeding against the corporation, all the powers and authority conferred, and subjects him to all the obligations and duties imposed upon receivers appointed in case of the voluntary dissolution of a corporation. And by the 72d section, all the provisions of law in respect to trustees of insolvent debtors, the collection and preservation of the property of such debtors, &c. are declared to be applicable to receivers appointed upon such voluntary dissolution of a corporation. The 2d section of the act of January, 1836, for the more convenient adjustment of the affairs of certain insurance companies in the city of New-York rendered insolvent by the late fire in that city, also provides that the receivers appointed under that act shall be subject to all the obligations and duties imposed upon receivers under any law of this state. They are thus brought directly within this provision of the revised statutes relative to the offset of claims arising from mutual credits as well as mutual debts, between the trustees of an insolvent debtor and other persons. The right of set-off in this case, therefore, is the same as it would be in the case of an assignment under the insolvent act, which is more extensive, even in suits at law, than it would be under the general provisions of the revised statutes relative to set-off in ordinary cases, where the rule of convenience alone prevails, and where the parties may generally obtain a remedy for the recovery of their counter claims by cross suits in cases which are not provided for by the statute. The language of this section, in relation to set-off in the case of trustees of an insolvent debtor, is the same as that of the English bankrupt act; which has been repeatedly held not only to embrace mutual debts, but also all credits and transactions *ex contractu,*

where the credit or contract must utimately terminate in a debt, although the debt had not been liquidated or become due and payable at the time of the bankruptcy; and it extends the right of set-off to every such debt or claim which the creditor of the bankrupt would have the right to prove and receive a general dividend for under the commission. Thus in the case of *Graham and others* v. *Russell*, (5 *Maule & Selw.* 498,) which was heard in the exchequer chamber before the twelve judges, under this provision of the bankrupt act in relation to mutual credits it was held that in a suit brought by the assignees of the bankrupt upon an open policy, against the underwriter, the latter might offset a debt due to him from the bankrupt arising out of a different transaction. That case was precisely like the present, except that the assignees were there suing for the recovery of an unliquidated demand under the policy and the defendant claimed the right to offset the liquidated debt, whereas in this case the liquidated demand belongs to the receivers, as the representatives of the estate of the bankrupt underwriters, and the unliquidated claim under the policy belongs to the other party. The right of set-off, however, is the same, whether the unliquidated credit belongs to the plaintiff or the defendant in a suit at law.

Whether this case, therefore, be considered as coming under the general law of set-off, except for the improper and unconscientious refusal of the receivers to adjust the loss as it was their duty to do, or as coming within the more extended principle of the revised statutes relative to the adjustment of cross demands between the trustees of insolvent debtors and other persons, there cannot be any reasonable doubt that the amount of the last bond and mortgage, which was executed by the assured only, should be offset against the claim of Holbrook under the policy. The decision of the vice.chancellor against the right of Holbrook to offset a portion of his loss against the amount due from him on that bond and mortgage, was therefore erroneous and must be reversed. The receivers must adjust the loss under the policy, and cancel that bond and mortgage, upon receiving from Holbrook a written acknowledgment that the amount

1836.

Holbrook
v.
Receivers or
the American
Fire Ins. Co.

of the bond and mortgage, including interest thereon until the expiration of the sixty days from the time when the preliminary proofs were exhibited to the officers of the company, has been thus offset and allowed to him in the adjustment of his loss.

The claim of the appellants to offset the residue of the loss due upon the policy against the bond in which Ferme was jointly holden with the assured, does not come within either of the statutory provisions in relation to the right of set-off; and if the loss had been adjusted by the receivers according to the directions of the act of January, 1836, it could not have been offset in the suit subsequently brought upon the bond against Holbrook and Ferme jointly. The only way, therefore, in which an offset could be compelled, even if the receivers had done their duty in relation to the adjustment of the loss, would have been by an application to the equitable powers of this court, upon the ground that the loan was in fact made to Holbrook only, and that Ferme joined therein merely as his surety. If such was the real nature of the transaction, it would, in an ordinary case of insolvency, be a sufficient ground for the exercise of the equitable power of this court in granting relief beyond the strict letter of the statutes of set-off. But to entitle a party to such equitable relief in a case not provided for by the statute, he must either have an equity arising out of the contracts or dealings between the parties, from their connection with each other, or his natural equity to have one unconnected claim compensate or discharge another must be superior to any equitable claim which can be urged in favor of those for whose benefit his claim to an equitable offset is resisted. The natural equity to have mutual but unconnected demands between two parties who have been dealing with each other is, as a general rule, superior to the claim of any other creditor who has not dealt with the insolvent upon the faith of the specific fund against which the right of offset is claimed. In the case under consideration, however, as the petitioners had no right under either of the statutory provisions on this subject, to offset the loss which belonged to Holbrook alone against the bond upon which he

1836.

Holbrook
v.
Receivers of
the American
Fire Ins. Co.

and Ferme were jointly as well as severally holden to the company, there are some equitable considerations in favor of the general creditors of this insolvent company which render it doubtful whether this court should interfere in relation to this part of the appellant's claim. The general creditors of the company, for whose benefit the receivers resist the claim of offset, are not in the situation of ordinary creditors of an insolvent debtor, who have dealt with him without any particular reference to the security of the debt or fund against which the offset is claimed. The charter of this company requires the capital stock, which is the security to which those who insure with the company must naturally look for their indemnity in the case of such a loss as this was, to be kept permanently invested on bond and mortgage. And I presume the loan of $4000, for which the bond and mortgage of 1833 was given was a part of that capital stock, to which all those who insured with the company had an equal right to look for their indemnity. I have, therefore, though I confess with some doubt as to its correctness, arrived at the conclusion that the equitable claims of all the creditors of the company, who have suffered loss by the calamitous event which has deprived them of their property and rendered the company insolvent at the same time, to an equal share in the capital stock and funds of the company, is equal to the natural equity of having one unconnected demand satisfy or compensate another, in the absence of any statutory provision on the subject. So much of the decision of the vice chancellor as relates to the offset against the bond of Holbrook and Ferme must therefore be affirmed; and so much thereof as relates to the other bond and mortgage, and to the costs of opposing the petition, must be reversed. Neither party is to have costs as against the other, either upon the original application or upon this appeal. But as the receivers have acted for the benefit of the general creditors of the company, and probably under their directions, they will be permitted to retain their costs out of the fund in their hands: although they were clearly wrong in refusing to adjust the claim of Holbrook under the policy, for the purpose of depriving him of his legal

right of set-off in relation to his own bond and mortgage. The proceedings are to be remitted to the vice chancellor, to the end that he may make such further order as may be necessary to carry into effect this decision.