1843.

DAVIS
v.
LIFE INS. AND
TRUST CO.

DAVIS *v.* THE AMERICAN LIFE INSURANCE AND TRUST
COMPANY AND ITS TRUSTEES.

D. was induced by the acting officer of a company to buy up 1000 shares
of its stock and pledge them to the company, they advancing $50,000
on his note therefor. The company passed away these shares as on their
own account. D. remonstrated; and they gave him up the note, paid
him a balance and left an unascertained amount still coming to him in
the transaction. Afterwards, the same officer induced D. to let the mat-
ter, for conformity, be reinstated upon their books and to give two large
notes to cover the transaction, but not by way of indebtedness. Besides
this affair, D. and J. had given their joint note for a loan. The com-
pany became insolvent; and its trustees brought actions against D. on
the two large notes and on the joint note. He filed a bill to restrain
the actions and for an injunction: *Held,* that D.'s claim for remaining
balance on the 1000 shares was not sufficiently liquidated to allow of
an equitable set-off; that the joint note could not, under any circum-
stances, be the subject of set-off against such individual claim; and that
D. had a defence at law. Temporary injunction dissolved.

*Oct.* 18,
1843.

*Injunction.*
*Action at*
*law.*
*Jurisdic-*
*tion.*

THE complainant, Charles A. Davis, showed, by his bill,
that the American Life Insurance and Trust Company, a
corporation created by the legislature of the State of Mary-
land, had, in the year one thousand eight hundred and
thirty-five, an office or agency in the city of New York,
under the direction and management of a vice-president
and trustees and one assistant secretary. That the com-
plainant became the owner of fifty shares of the stock of
the said company and hypothecated them for twenty-five
hundred dollars to the company and gave his promissory
note for the amount. That the bank of the United States,
in Pennsylvania, held two thousand shares of the stock of
the said company; and that Mr. John Duer, who then was
the vice-president of the said company and at the head of
its said agency in the city of New York, proposed to the
complainant that, if he would purchase one thousand of
such two thousand shares, the said company would lend
him the sum of fifty thousand dollars, which would be
equal to the nominal or par value of the one thousand
shares, upon the promissory note of the complainant, col-
laterally secured by an hypothecation of the said one thou-

1843.

DAVIS
*v.*
LIFE INS. AND
TRUST CO.

sand shares and which should be subject to the complainant's control and be sold and disposed of at such times as he should direct. That all this took place; and the complainant gave his note for fifty thousand dollars, payable on demand, to John Duer, as vice-president, with interest; and the shares were transferred direct (by the direction of the said Duer) to the said John Duer as vice president of the said company. That about the latter part of the month of November one thousand eight hundred and thirty-eight, the complainant, finding that the stock of the said American Life Insurance and Trust .Company had reached, in the market, from twenty to twenty-three per cent. above par, he (then in Philadelphia) wrote to the said vice-president in New York, with directions to sell the said one thousand shares of stock for the account of the complainant. That sum afterwards, on inquiry as to the sale having been effected, he found that the company, through the said John Duer as such vice-president, had sent the said one thousand shares of stock of the complainant's to Messrs. Prescott, Grote, Aimes & Co., the bankers and agents of the said company at London, as a remittance and for sale and so as to credit the proceeds to the company in their account with the said bankers. That all this was done without the knowledge or consent of the complainant; and it was done at a time when the company was indebted to the said Messrs. Prescott, Grote, Aimes & Co. in the sum of seven hundred and fifty thousand dollars and upwards, and for which the latter were urging for payment. That the complainant remonstrated; and insisted that he was entitled to claim and did claim the full market value of the said stock at the times when the same was so remitted; and, also, insisted that the amount of such market value should be credited to the complainant and applied to the payment and discharge of his said note for fifty thousand dollars and that the surplus of the value should be paid over to him. That the said company, by the said John Duer as its vice-president, admitted the justice of all such claim; and did give up such promissory note to the complaint as if paid and cancelled; and, afterwards, paid over to him, in cash, the sum of two thousand and fifty-four dollars and forty-

seven cents, on account of balance due to him for the value
of such shares ; and he claimed an adjustment for remain-
ing balance of value.   That the said Duer, still acting as
vice-president, afterwards called on the complainant and
urged him, with a view that the books of the company
might conform, to let the transaction appear as reinstated,
by this complainant's giving two promissory notes, one for
twenty-six thousand seven hundred and five dollars and
fifty-five cents and the other for twenty-six thousand seven
hundred and sixty-six dollars and sixty-seven cents ; and
which the complainant, in confidence, did.   That no pro-
perty or thing of value was ever given for them ; and the
complainant charged that they were not valid securities
against him in the hands of the said company or of their
assignees.   That the said Duer, at the time he applied for
them, gave the complainant to understand that the said two
notes were not intended to be held as acknowledgment of
any existing indebtedness, but merely as vouchers and to
serve as mere memoranda of debit in the final settlement
of the one thousand shares.   Also, that in May one thou-
sand eight hundred and thirty-eight, the complainant and
the said John Duer made their joint note to the said company
for £2848 14*s.* depositing, as collateral security, certain stock
of the Buffalo and Niagara Falls Railroad Company.   That
the said company had become insolvent ; and the defendants,
George F. Talman and Patrick Macauley, were its trustees.
And they had commenced actions against the said complain-
ant on the said two large notes, as well as on his note for two
thousand five hundred dollars and, also, on the joint note
made by the said complainant and the said John Duer.
That the said complainant was advised that, inasmuch as
his claim in the premises was founded on a tortious or
wrongful conversion of his said one thousand shares of
stock and was for unliquidated and unascertained damages,
such claim was not admissible at law by way of off-set and
he could not avail himself thereof by way of defence there.
And he insisted that, inasmuch as there was a balance still
due to him on the transaction of the one thousand shares,
the amount thereof should go against his joint liability on
the note for £2848 14*s.* given by him and the said John

Duer. *Prayer*, to restrain the actions; and for an injunction accordingly.

A temporary injunction was allowed, except as to the note for two thousand five hundred dollars.

The defendants moved to dissolve it, on bill alone.

1843.

DAVIS
*v.*
LIFE INS. AND
TRUST CO.

Mr. *D. Lord*, for the defendants and in support of the motion.

Mr. *C. O'Conor*, contra.

THE VICE-CHANCELLOR :—I had considerable hesitation about allowing the injunction, in the first instance, from doubts which I then entertained of the necessity of the complainant's coming into this court for relief in respect to the two large notes and as to the bill making out a case sufficient in law or in equity to exempt him from the payment of the other two notes mentioned in the bill and on which distinct suits were brought. The bill calls for no discovery here; and, indeed, the complainant stands in need of none; because the facts, which he has set out, can, doubtless, be proved by the then acting president and secretary of the company—both of whom must have a personal knowledge of the transactions and can be called as witnesses on the trial of the suit at law. But the great point is, whether the facts alleged constitute a good defence at law, either by way of set-off or otherwise; and if not, how far they will avail the complainant as a matter of equitable relief in this court?

*Dec. 12.*

The bill proceeds on the ground that the complainant has a just claim for the market value of the 1000 shares of stock or for damages resulting to him from the wrongful conversion of them to the use of the company, which he cannot set off at law against the notes; and that his remedy, in a distinct action for such wrongful conversion or for the value upon an express or implied contract, would be unavailing to him against an insolvent, broken-down, foreign corporation. All this is very true, for I think the demand which the complainant has a right to make, either for the market value or for special damages for the *tort*, in which-

1843.

DAVIS
v.
LIFE INS. AND
TRUST CO.

ever light it may be presented, is not such a demand as can be the subject of set-off under the statute. The amount is not liquidated nor is it capable of being ascertained by calculation within the meaning of those terms as used in the statute : 2 R. S. 354, sec. 18, pl. 3 ; and see *Holbrook* v. *Receivers of American Fire Insurance Company*, 6 Paige, 220. But, though a legal right of set-off may not exist, I think the bill presents a case of a perfect and full defence at law against the payment of the two large notes for twenty-six thousand seven hundred and five dollars and fifty-five cents and twenty-six thousand seven hundred and sixty-six dollars and sixty-seven cents, on which one of the suits at law is founded. According to the bill, these notes were given and accepted by the company with no view or purpose of ever calling on the complainant to pay them. The company had already received the money for which they were given and they were, consequently, without consideration. The original indebtedness of $50,000 had been paid and the note for that amount surrendered and cancelled under an arrangement and settlement of the tenth day of December 1838, and sometime afterwards those two new notes were applied for and given as a mere favor and not as a matter of right to serve the purpose of vouchers in the hands of the officers of the company—not as any evidences of debt which the company could or would ever attempt to enforce, because, by the agreement, the company were still to account for some balance confessedly coming to the complainant from the stock which the company had taken and sold in London, over and above the two thousand and fifty-four dollars which they had paid to him at the time of surrendering the fifty thousand dollar note. Why is not all this a good defence at law in the suit upon these two large notes, not, it is true, by way of set-off or of counter claim, but as showing a total want of consideration, rendering the notes mere blank pieces of paper and no evidence of debt in the hands of the company? I apprehend there cannot be a doubt on the subject ; and, if so, the complainant is under no necessity of seeking relief against the notes in this court. In this respect it is not unlike the case of *Minturn* v. *The Farmers' Loan and Trust Company*, in which the

chancellor recently, on appeal, ordered an injunction dissolved, which had restrained a suit at law on a promissory note, collaterally secured by a pledge of stock and in relation to which the complainant insisted that, in the course of the dealing, he had become exonerated from all personal liability. The chancellor decided that he should be left to make his defence at law. Then, as regards the note payable in sterling money on which a suit is also brought against the complainant and Mr. Duer jointly and enjoined by the present injunction. This note appears to have originated in some other transaction with the company in which Mr. Duer and the complainant were jointly interested, having no connection with and entirely distinct from the business of the one thousand shares of stock and the giving of the original fifty thousand dollar note and the subsequent two notes above mentioned. The bill raises no objection to the validity of this note nor to the liability of the makers upon it for that part of the amount which has not been paid. It only insists that the complainants claim against the company for the proceeds or value of the one thousand shares of stock still remaining to be accounted for and paid to him will go far towards paying off or satisfying this note. As already shown, this cannot be done by way of set-off by reason of the unliquidated character of the demand. And it is, moreover inadmissible as a set-off, because the note is a joint note of the complainant and another person and the suit is against them both. "If there be several defendants," (says the statute) " the demand set off must be due to all of them jointly :" 2 R. S. 354, sec. 18, pl. 6. The bill contains no allegation to show that, as between the complainant and the other joint maker, it belongs to the complainant alone to pay the note so as to take the case out of the strict letter of the statute and enable this court to apply the principle of allowing cross-demands arising from mutual debts or mutual credits in the same right to compensate each other where insolvency or bankruptcy has intervened to prevent a recovery in a cross action. The fact of its being a joint note or a joint bond that is sued upon prevents the application of that equitable doctrine, as is shown by the chancellor in considering one branch of the

1843.

DAVIS
*v.*
LIFE INS. AND
TRUST CO.

1843.

DAVIS
v.
LIFE INS. AND
TRUST CO.

case of *Holbrook* v. *Receivers of the American Fire Insurance Company*, (see 6 Paige, 231,) and on this same point of extending equitable relief beyond what is allowed by the statute, another difficulty exists in the present case, that the sterling note sued upon and the transaction concerning the one thousand shares of stock have no connection with each other, but were in their origin entirely distinct, growing out of different contracts or dealings, in the one of which a third person was a party who had no interest in the other. This subject is remarked upon by the chancellor in the case cited where he held that Holbrook's individual demand for a loss upon a policy of insurance could not be allowed even in this court to compensate or satisfy a joint bond of his and another person which were held by the receivers of the Insolvent Insurance Company with whom he had effected the insurance, the giving of the bond and the policy of insurance having no connection as parts of the same transaction and it not being pretended that the bond was given for the individual debt of Holbrook with the other person to it as surety only. For the same reasons I think the claim which the complainant has against the company, however just, cannot be allowed either at law or in this court to interfere with the legal right of the company or its assignees to proceed with the suit upon the sterling note.

The suit upon the twenty-five hundred dollar note mentioned in the bill was not enjoined, and hence the present motion does not involve the consideration of any question in relation to it. The injunction, as far as it was granted, must be dissolved, with costs to be taxed.

*Order accordingly.*