Robertson, J.
The capital or funds on which the charter of the Atlas Mutual Insurance Company, represented by the plaintiff, contemplated that it was to carry on its business, and to which holders of policies from it were entitled to look for security, consisted of those derived from three sources:
1st. Premiums on the first applications for insurances before the organization of the Company, amounting in the aggregate to half a million of dollars, on the receipt of which it was entitled to commence business. (Laws of 1843, p. 67, §§ 2, 4.)
2d. Advances by third persons of money for such time and upon such terms as should be agreed, not exceeding in the aggregate one hundred thousand dollars. (§ 7.)
3d. Notes for premiums in advance received from persons intending to take out policies. (Laws of 1842, p. 263, § 12.)
Nothing is said in the charter as to how the premiums first mentioned are to be paid, whether in cash or on credit; for the advances so made to the Company, they were to issue certificates of fifty dollars each, pay legal interest thereon, and after apportioning profits and losses between such advances and premiums earned for expired policies, pay on such advances their proportionate share of profits until the whole was refunded, or deduct therefrom their proportionate share of losses until the whole was exhausted. The Company were to be at liberty to negotiate such notes for premiums, in order to pay losses, and upon such portion of them as should exceed the amount of premiums earned by the Company from the makers, they were to pay a compensation at a rate not exceeding five per cent per annum. (§ 12.)
The Trustees of the Company were also authorized to issue certificates to persons in whose names policies of insurance, on which the risk had expired had been issued, of a certain per centage *633 on the premiums paid by them for such risks; which certificates should be for their share of the profits, to be subject to future deductions for losses, and to redemption when the net profits exceed a certain sum. (§ 13, Charter of Atlantic Company.) Persons insuring, or entitled to certificates, were expressly declared not to be answerable by reason thereof, or of anything contained in the act of incorporation except for the premiums or notes given in advance for premiums.
There is no prohibition in such charter, express or implied, against giving credit for premiums, nor are any persons insured declared to be members or incorporators.
Prior to incorporating the class of Insurance Companies of which the Atlas Company was one of whose charter that of the Atlantic Mutual Insurance Company, passed in April, 1842, was the model, another class of Insurance Companies, including the General Mutual Insurance Company of New York, of whose charters that of the United Mutual Insurance Company was the model, (Laws of 1840, p. 260, § 6,) were incorporated. By the sixth section of the act incorporating the General Mutual Insurance Company, (Laws of 1841, p. 231,) every person who in his own name or that of his firm, had taken out a policy of insurance from such Company, was declared to be a member of such Company, and every one who should so become a member was required the first time he effected insurance before receiving his policy, to pay the rates that should be fixed by the Trustees. It was also declared that no premium so paid should ever be withdrawn from such Company, but should be liable to all losses and expenses incurred by it during its existence.
In the case of Lawrence, Receiver of the General Mutual Insurance Company, v. Nelson, decided at the last term of the Court of Appeals, in which the judgment of this Court at General Term was affirmed, the liability of persons insured in such Company for the payment of their premiums to the Company, without a right of offset of a claim against such Company, came up for adjudication. The Court decided in favor of such liability, and, as I understand the opinion delivered, expressly upon the grounds that they became, under the charter, members, merely by making the insurance; that they were to pay their premiums in cash; and that such premiums, so paid in, were made, by the charter, *634 a fund incapable of being used except to pay losses. Judge Weight, who delivered that opinion, says, expressly: “The defendants in this case became members of a Mutual Insurance Company, by effecting insurance therein: it was that class of Mutual Companies authorized to commence and transact an insurance business on the cash premiums paid by the associates. The first premiums paid were never to be withdrawn, but were to be pledged for the losses and expenses of the Company. The dealers and corporators were to pay their premiums in cash; and such premiums, and the income derived from their investment, were to constitute a fund for the payment of losses and expenses of the Company.” He had previously stated that the rule is different from that of an ordinary Insurance Company, “where the Company is a mutual one, and the insured a member or corpora-tor, an insurer as well as party assured, and the Association has no dealings in regard to insurance except with its own members.” “In a company of mutual insurers, each sufferer is bound to make compensation as well as receive it: the premium, whether paid, or secured to be paid, is withdrawn from his control, in contemplation of law, and placed in a common fund, subject, not only to his claims, but those of all others in the Company.” “ The members of the Association virtually agree to insure each other, and provide a common fund to indemnify in case of loss, as all have contributed to it.” Such is the reasoning, and the result to which it leads, in a strictly Mutual Company, where no one is insured, except he becomes a member, where his premium of insurance forms part of the capital stock, is required by law to be paid in cash, and is bound to go into a common fund to indemnify all the members against a loss. But the same reasoning docs not apply to a Company where any one can be insured, where credit may be given on premiums for policies, where the premiums are not required to be kept apart as a fund, and where five per cent is to be paid for a loan of credit wherewith to meet losses. Besides this, in the case now before the Court, the liability of the defendants was permitted to be made by a promissory note, with all the advantages and disadvantages of that form of contract. What are sometimes loosely called subscription notes, under the twelfth section, do not have attached to them the statutory liability of a stockholder to pay in his subscription: *635 the makers of them receive, for such portion as they do not work out as premiums on policies of insurance, the extra compensation of five per cent for the risk they run in being obliged to pay the whole note. In the strictly Mutual Company, every policy of insurance taken out is a subscription to the capital stock, to the extent of the premium, which the statute requires to be paid in cash, and, when paid, becomes inviolable, except for payment of losses, either in full or pro rata. In such Companies, giving and accepting a note payable at a future day for a premium amounts simply to an agreement to subscribe at a future day. The Company is, in law, a trustee of the mass of premiums for all the stockholders; and what is due from it as an artificial person to a single stockholder cannot be offset.
I think, therefore, that the conclusions of that case are not applicable to this, and that the maker of a note under the 12th section, whether he has used it up by premiums or not, is not a member or corporator; and that his liability is not beyond that of any other maker of a note for value taken by the Company in the course of its business, and that any money to be paid by him was not to be held in trust for the payment'of losses beyond any other assets of the Company.
But if the maker of such a note were to be considered as a member, and therefore partner with the other parties insured by such Company, and so not entitled to an offset, notwithstanding he was to receive five per cent compensation for the loan of his credit by such note, until he changed it into a credit to himself for premiums due; the note in question varied in character from one of such description, for the agreement upon which it was given was to have a deduction of one-twentieth on the premiums charged against it, although the receipt given for it expresses that five per cent was to be paid by the Company on the payment of the note. Neither of these provisions correspond with the conditions attached by the 12th section to notes given under it, and ought to be enough to save the defendants from the penalty of being a delinquent stockholder of a strictly Mutual Company; but, I am satisfied to place the position of the defendants on the first grounds stated.
If the note in question, or the premiums it represents, therefore be an ordinary debt to the Company, on which credit has *636 "been given, I think the defendants clearly entitled, under the decision in the case of Holbrook v. The Receiver of the American Fire Ins. Co., (6 Paige, 220,) to offset his claim, liquidated before the appointment of the plaintiff, against the amount claimed to be due on the note, and that judgment should be given for the defendants to that effect, without costs, as stipulated in the submitted case.