Monell, J.
It was conceded on the argument of the demurrer that the undertaking of the defendants created a joint and several obligation ; and, therefore, if the counter-claim had been pleaded by the defendant Chester separately, it would have been a defense as to him. And the plaintiff, by replying, has made the further concession that it is available as to him, although pleaded by the defendants jointly.
The demurrer is as to the sufficiency of the answer as respects the defendant Gilbert; it being claimed that the facts pleaded, although a defense as to Chester, are not a defense as to his co-defendant, either jointly with Chester, or otherwise.
If the obligation of the defendants is several as well as joint, and a several judgment can be had, then the counter-claim is available as a defense, under section 150 of the Code, which provides that it “must be one existing in favor of a defendant, and against a plaintiff, between whom a several judgment may be had in the action.”
Upon such an obligation, the obligors could be sued jointly or separately, and a judgment recovered against both, or against one only. In separate actions, either could make as many defenses as he might have; and so in a joint action, either could plead a counter-claim due to himself; and if sufficient to satisfy the plaintiff’s demand, it would be available to his co-defendant as a payment, leaving the question of contribution to be settled between the defendants, in another action.
The provision of the Code in this respect differs from the Revised Statutes concerning set-off (2 Rev. Stat., 354, § 18, subd. 6), which restricts the latter to a *134 demand due to all the defendants jointly. Under the Code, therefore, if the liability is joint and several, one of several defendants, although sued jointly with other parties to the contract, may avail himself of a counterclaim, existing in his favor against the plaintiff; and, if allowed, it will operate, wholly or pro tanto, as the case may be, as a satisfaction of the plaintiff’s claim, and bar a recovery against the remaining defendants. There can be but one satisfaction, and the allowance of a counter-claim will be treated as a payment, by one of several jointly and severally liable, entitling him to contribution from the remaining ..obligors.
This doctrine was applied, substantially, in Parsons v. Nash (8 How. Pr., 454); in Briggs v. Briggs (20 Barb., 477); and in Newell v. Salmons (22 Id., 647), where it was held, that where there is a several as well as a joint liability, a counter-claim existing in favor of one of several defendants is a defense as to all. But in all . these cases, the right to counter-claim is confined to the several liability of the defendants, and these decisions do not, as they could not, include cases of exclusively joint obligation, in which latter case, neither under the Code nor the Revised Statutes, can such a defense be set up by all or either of the joint obligors.
The undertaking executed by the defendants in this case creates a joint, and not a several liability. It is “we” undertake, and there are no words of severance. Where an obligation is undertaken by two or more, it is the presumption of law that it is a joint obligation; and if a different responsibility is intended, there must be words to indicate such intention (1 Pars. on Cont., 11),. or at least such clear extrinsic evidence of it, as will authorize a contradiction of the written instrument. Even this, however, is doubted (Id.), and the letting in of such evidence seems to be restricted to relief in equity to correct mistakes (1 Story Eq., § 162). In such cases it will sometimes be presumed from ex- *135 triiisic facts and circumstances, that an obligation by its terms joint only, was intended to be joint and. several {Id.). Thus a joint loan of- money to two obligors was deemed sufficient to reform a joint bond and make it joint and several, upon the presumption, that as the debt was joint, it was the intention that the obligation should attach equally to all, and that could be done only by making the bond several as well as joint {Id.). But, as stated by Sir Wm. G-baxt, in Sumner v. Powell (2 Meriv., 35, 36), “when the obligation exists only in virtue of the covenant, its extent can be measured only by the words in which it is conceived.” And he instances a partnership debt, treated in equity as the several debt of each, for the reason, that all the partners had a benefit from the credit. This restriction to a mere power in a court of equity to reform an obligation, confines the rule to cases where the parties are the equal beneficiaries in the consideration which sustains the obligation, and not where their relations are various and different. Hence, a court of equity will not reform a bond against a mere surety, so as to make it several as to him, upon the presumption of a mistake from the nature of the transaction, but will require positive proof of an express agreement by him that it should be several as well as joint (Weaver v. Shryock, 6 Serg. & R., 262). And in another case (Richardson v. Horton, 6 Beav., 186), where the obligation did not grow out of any antecedent liability in all or any of the obligors to do what they have undertaken (as a bond of indemnity for the acts or debts of third persons), it was said that a court of equity will not by implication extend the responsibility from that of a joint to a joint and several undertaking. See, also, Ward v. Webber (1 Wash., 274; Harrison v. Field, 2 Id., 136).
The implication of law that a several as well as a joint liability was intended, arises only where all have received the benefit of the loan or credit, or were in *136 some way antecedently liable; and in no other case will a court of equity give relief, without clear proof of an express agreement to create a different liability. And when parties to a joint bond are shown to be mere sureties or indemnitors, not having received any benefit from, or been in any manner connected with any antecedent liability, the court will not enlarge or change the obligation.
In the case now before me, the defendants were mere sureties. They were not parties to the action; had incurred no previous liability, and had received no benefit from the subject which was antecedent to this suretyship. There can, therefore, be no presumption or implication raised by any extrinsic fact or circumstance of any intention to create a different contract or liability than is expressed in the instrument they signed. And as that instrument by its terms creates a joint and not a several liability, it must remain as it is, until it is made by the judgment of a court of equity to express a different agreement.
Being, as I have endeavored to show, a joint liability only, it follows there can be no separate judgment, and the counter-claim set up in the answer, therefore, is not allowable under the Code, and constitutes no defense, unless upon the application of equitable principles, which may be invoked under some of the allegations of the answer, the court can, independently of the Code, and of the Revised Statutes, make the judgment assigned to Chester available, as an equitable set-off.
It is alleged in the answer that the defendant Chester acquired the judgment against Wussbaum, prior to the assignment from Reed to the plaintiff, of the undertaking in suit; and, therefore, that the plaintiff took subject to all the equities existing between the assignor and Chester. And there is the further allegation, up *137 on information and belief, that Nussbaum is insolvent.
A court of equity is not confined to the terms of the statute of set-off, but can allow a set off to be made in a case not within the statute, where, from the peculiar circumstances of the case, justice cannot be obtained in a cross action (Lindsay v. Jackson, 2 Paige, 581). And the insolvency of one of the parties has been deemed sufficient ground for the exercise of this equitable jurisdiction (Simpson v. Hart, 14 Johns., 63). In that case, the plaintiff sought to set off a judgment against two, one of whom had a judgment against the plaintiff, it being alleged that the two were insolvent. Judge Speyceb, in delivering tne prevailing opinion, says : “ There is no force in the objection that the judgments are not in the same right; it is settled ‘ that although the demands, as being joint and several, are not, strictly speaking, due in the same right, yet, if the legal or equitable liabilities, or claims of money become vested in, or may be urged against one, they may be set off against separate demands, and vice versa’ ” (See Mitchell v. Oldfield, 4 Term R., 123).
Mr. Story, in his Equity Jurisprudence (2 Eq. Jur., § 1437), states the rule a little more narrowly. He says courts of equity, following the law, will not allow a set-off of a joint debt against a separate debt, and conversely, of a separate debt against a joint debt, except under special circumstances creating an equity which will justify the interposition ; and he seems to require a clear series of transactions, establishing that there was a joint credit given on account of the separate debt. And the chancellor, in Holbrook v. Am. Fire Ins. Co. (6 Paige, 220), sustained the vice-chancellor, who expressed the opinion that the objection that the joint debt could not be set off against a separate debt, could be obviated by proof of the actual re *138 lations of the parties, — namely, whether one was merely surety, or whether they were jointly borrowers.
In the recent case of Smith v. Felton (43 N. Y., 419), the facts authorized the same distinction to be drawn. The bank held the note of one partner, indorsed by the other, but which had been discounted for the firm. The bank having become insolvent, passed into the hands of a receiver, who brought suit on the note,- and a debt due to the firm was allowed as an equitable set-off. The court, however, made no such distinction, but recognizing the insolvency of the bank as sufficient ground for the'allowance of the set-off, put its decision on the ground "that justice and equity demand that the debts should be set off against each other, rather than that the defendants should be made to pay the note, and left to rely upon the estate of an insolvent debtor for the payment of the debt due them.”
The defendant Chester certainly has a clear equity in his favor, of which he should not be deprived merely because he is jointly liable with another, who has no interest in the set-off. Equity demands that the set-off should be made available to him, and, if it is allowed, it must operate, as I have before shown,, as payment, in whole or in part, of the plaintiff’s claim.
This reasoning leads to sustaining the answer in behalf of both the defendants, and as stating facts sufficient to constitute a defense for both, and, therefore, overrules the demurrer.
The views I have expressed are quite different from those of either counsel on the argument, which related wholly to the construction of section 150 of the Code, under the concession that the liability of the defendants was several as well as joint.
The defendant Gilbert must have judgment upon the demurrer with costs, with leave to the plaintiff to withdraw the demurrer and reply to the answer, within twenty days, on payment of costs.