106   461
170   547

THE HOWE MACHINE COMPANY

*v.*

WILLIAM C. HICKOX *et al.*

*Filed at Ottawa May 10, 1883.*

1.  SET-OFF—*of judgments between different parties—whether set off at law, or only in equity.* Judgments not between the same parties can not be set off at law, and it devolves upon the party seeking to set off a judgment in his favor against A and B, as to a judgment by A for the use of C, against such party complainant, to show some equitable ground for being protected against the judgment so held by A. It is not enough that complainant may have shown his rights are equal to those of C, the beneficial plaintiff in that judgment. Unless the complainant can show they were superior to any equitable claim which could be urged in favor of the beneficial plaintiff, he can not succeed.

2.  ASSIGNEE OF CONTRACT—*whether chargeable with notice of equities between his assignor and the other party to the contract.* A contract was made between a machine company for the closing up of the business between it and A and B, in which the company agreed to pay A two dollars for each sewing machine sold by him, or upon a lease in certain territory, provided A should devote his time and best energies to the sale of such machines, and A assigned and sold to C all his rights and demands under the contract. It was *held,* on a bill by the machine company to have a judgment recovered by A for the use of C set off against a judgment recovered by the company against A and B for a larger sum in a different State, that C, the assignee of A, was only required to know the terms of the contract of A assigned to him,

and the rights of the parties thereunder, but was not bound to take notice of the equities of the company against A and B, or of the judgment against them, thus treating the agreement between the company and A and B as constituting two distinct contracts, one with A and B, and the other with A.

3. Contract—*whether joint or several.* Where the language of a contract is capable of being so construed, it will be taken to be joint or several, according to the interest of the covenantees; and when the legal interest and cause of action of the covenantees are several, they should sue separately, though the covenant be in joint terms.

4. Same—*where two in one writing.* A machine company entered into a written agreement with A and B, which provided for the closing up of an existing business arrangement between the company and A and B, and the carrying on of a new business by A for the company. It was *held*, that there were two distinct contracts, the one between the company and both A and B, and the other with A, as much so as if written on separate papers, and that the one had no connection with the other, and that A might assign his demands on the company under his contract, unaffected by the equities of the company against A and B, when the assignee had no notice in fact of such equities.

Appeal from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. William H. Barnum, Judge, presiding.

This was a bill in chancery, in the Cook circuit court, by appellant against appellees, and as the bill was amended, the substantial allegations are as follows:   That on May 23, 1878, appellant recovered a judgment in the Supreme Court of New York for $38,314.22 against William C. Hickox and Joel M. Hickox, upon which execution was issued' immediately, and returned *nulla bona;* that the judgment has never been paid, and that both said judgment debtors have been, since the rendition of the judgment, insolvent; that at the October term, 1878, of the Cook circuit court, a suit was commenced on the law side, by William C. Hickox, for the use of I. B. Hickox, against complainant, claiming that there was due William C. Hickox from complainant $2300, under the following contract:

"Memorandum of agreement made this 3d day of March, A. D. 1874, for the closing of the business now existing between the Howe Machine Company, a corporation created under and by virtue of the statutes of the State of Connecticut, party of the first part, and W. C. and J. M. Hickox, of the city of New York, parties of the second part:

"In which it is agreed by the party of the first part to take from the parties of the second part all the machines, parts of machines, fixtures, etc., which they have on hand, or which may be returned, from whatever cause, at the price they were consigned, which is forty per cent from retail price, and all other merchandise at the price it cost the party of the second part; this includes second-hand machines, horse and harness, parts of counter, office fixtures, etc. It is also agreed that the party of the first part shall take the following accounts: G. W. Rumble, Fuller & Wood, Brooklyn office and Williamsburgh office; also J. M. Hickox account, which releases him from future liability for the same. In the closing of their business by the party of the second part, it is agreed by the party of the first part to allow the party of the second part the office desk room they now occupy, free. The closing of the business is to be conducted at the expense of the party of the second part, with the exception that the party of the first part are to let the collectors which make collections in Brooklyn and Williamsburgh, make what collections they may in said Brooklyn and Williamsburg for the party of the second part, without charge to the party of the second part herein. While the parties of the second part are closing out their business, which is to be limited to the first of May, 1875, the party of the first part is to allow W. C. Hickox, one of the parties of the second part, two (2) dollars on each and every Elias or A. B. Howe sewing machine sold, either for cash or upon a lease, in the territory now controlled by the parties of the second part, (provided W. C. Hickox, one of the parties of the second part, shall devote

his time and best energies to the sale of said machines,) which territory includes New York City, Brooklyn, Williamsburgh, Staten Island, and the tract they now control for South America, and all other sales for that section that do not go to a regular agent of the Howe Machine Company, and all sales at retail going to whatever section, which amount is due W. C. Hickox, one of the parties of the second part, when there has been ten or more dollars paid on said sale or lease, except on machines that are lost before the second payment has been made; in all such cases the two (2) dollars are to be paid back to the party of the first part.

"The above in no way refers to machines sold by the Howe Machine Company going to agents outside of the territory above mentioned, and to be sold outside. W. C. Hickox, in devoting his time and best energies to the sale of the machines in said territory, has the entire control of the men and women in his department, and the right to hire and discharge them, but will not keep any person or persons that are objectionable to the party of the first part, nor be compelled to keep any that are objectionable to the parties of the second part.

"It is also agreed that the party of the first part will allow the parties of the second part to use the men that deliver machines to bring in such machines as may have to be returned, which are now outstanding, without charge. The party of the first part can terminate this contract at any time by taking from the parties of the second part all unpaid leases at their face which they may have on hand.

THE HOWE MACHINE CO.

LEVI STOCKWELL, *Treas.*

W. C. HICKOX,

J. M. HICKOX.

"Signed, sealed and delivered in presence of witness.

     [SEAL.]          J. B. PHIPPS."

That the judgment against William C. and Joel M. Hickox represents the amount found due from them under said con-

tract, but that the contract, and the rights of William C. Hickox thereunder, were attempted to be assigned by the following words indorsed thereon:

"For value received I hereby sell and assign to I. B. Hickox all my claims and demands, founded on the within contract, against the Howe Machine Company, and authorize him to use my name in collecting and settling the same.

"Chicago, Aug. 23, 1878.          W. C. Hickox."

That the right of action claimed to exist in favor of said William C. Hickox, under said contract, is based upon a clause incorporated therein, and for services performed thereunder, granting certain rights and privileges to William C. Hickox, individually, and which services, it is claimed, were adjudicated in the suit resulting in said judgment; sets out and repeats the clause beginning with the words, "while the parties of the second part are closing out their business," and ending with the words, "nor be compelled to keep any that are objectionable to the parties of the second part;" that the contract was entered into and the services performed by the said William C. Hickox in the State of New York, and while he was a resident of that State; that neither William C. nor Joel M. Hickox is a resident of Illinois, and can not be served with summons; that until the commencement of the suit at law at the October term, 1878, complainant did not know of any claim asserted by William C. Hickox under said clause, but believed that the same had been adjusted and settled, and were represented by and merged in said judgment; that I. B. Hickox, at the time he took said assignment, had full notice of said judgment, and that the same was unpaid, and that said William C. and Joel M. Hickox were insolvent; that complainant plead a set-off of said judgment in said action' at law, which plea was held bad on demurrer, on account of said judgment having been rendered jointly against said William C. Hickox, and another, a stranger to said suit at

30—106 Ill.

law; that knowing the hopeless insolvency of said William C. and Joel M. Hickox, offers to allow said claim of $2300, provided an equal portion of the said judgment may be received and allowed as a set-off thereto; prays that William C. and I. B. Hickox be forever enjoined from prosecuting said suit at law, and that the claim of said William C. Hickox be set off and allowed *pro tanto* in satisfaction of said judgment, and that thereupon the claim of said William C. and I. B. Hickox be canceled, and forever afterwards held for naught; prayer for summons against William C., Joel M. and I. B. Hickox, and prayer for general relief.

The answer of the defendants admits recovery of judgment as alleged in the bill, but avers that it was obtained by fraud and collusion between complainant's and defendants' attorneys; that in equity William C. and Joel M. Hickox are not indebted to complainant in any sum whatever; admits that judgment is unpaid; admits bringing of suit at law by William C. Hickox for use of I. B. Hickox, as alleged in the bill; admits the assignment, as alleged; denies that William C. and Joel M. Hickox were non-residents at the time of filing the amended bill; denies that I. B. Hickox, at the time of taking the said assignment, had any notice of said judgment, or that the same was unsatisfied, or that he knew of the insolvency of William C. and Joel M. Hickox; admits the plea of set-off at law, and that it was adjudged bad on demurrer; avers that the actual consideration of said assignment was $2200 in cash, loaned by said I. B. Hickox to said William C. Hickox before the rendition of said judgment, all of which was due and unpaid prior to the time of the rendition of said judgment. To this answer there was a general replication.

Upon the hearing appellant gave in evidence the judgment roll of the Supreme Court of New York, for the city and county of New York, in a case wherein the Howe Machine Company was plaintiff, and William C. Hickox and Joel M.

Hickox were defendants.  It sets out, among other things, the contract of March 3, 1874, before set out in the amended bill of complaint; referee's report finding due $31,077.99, and interest from April 13, 1875, and costs, and judgment thereon.  It was then admitted by appellees' attorneys, as evidence on behalf of appellant, that William C. Hickox and Joel M. Hickox, defendants in said judgment and appellees here, were, at the time of the rendition of said judgment in the Supreme Court of New York, and ever since have been, insolvent.

On behalf of appellees, William C. Hickox, one of the appel-. lees, testified that he signed the assignment indorsed on the back of the agreement set out in the bill, on or about the day of its date, at the office of E. A. Sherburne, Esq., attorney for I. B. Hickox, and delivered the same to said Sherburne, as such attorney; that at that time I. B. Hickox did not know of any judgment recovered against witness and Joel M. Hickox by the Howe Machine Company, in New York; that said assignment was made pursuant to an agreement before then made in regard to the matter between witness and I. B. Hickox, and that I. B. Hickox knew nothing whatever of there being any indebtedness or claims of indebtedness in favor of complainant against William C. and Joel M. Hickox, or either of them; that said assignment was in consideration of the sum of $1100, of which $650 had been paid prior to said assignment, and the remainder has since been paid; that witness and Joel M. Hickox both resided in Chicago at the time this suit was brought, and have ever since resided there.

The foregoing was all the evidence heard or offered on the hearing.  The court thereupon decreed that appellant's bill be dismissed.  Appeal was prosecuted from that decree to the Appellate Court for the First District.  That court affirmed the decree of the circuit court, and the present appeal is from that judgment.

Mr. Jesse B. Barton, for the appellant:

As the judgment in New York against William C. and Joel M. Hickox, and the claim on which this suit was brought, arose under the same contract, the one demand was properly the subject of set-off against the other. But the court held that the judgment being joint, could not be set off against the claim, which was several. Equity widens the rule of law, and on account of the insolvency of Joel M. Hickox should have considered that from the date of the judgment it was a several liability of William C. Hickox, which would create that mutuality necessary in cases of set-off.

Had the company sued in Cook county on the New York judgment either William C. Hickox alone, or jointly with Joel M., then William C.'s claim under the contract could have been set off. *Stewart, use, etc.* v. *Coulter*, 12 S. & R. 252.

In equity, a joint judgment can be enforced against one debtor to the exclusion of the others, upon a showing of the insolvency of all except the one whose property is pursued. *Van Cleef* v. *Sickles*, 5 Paige, 301; *Commercial Bank* v. *Meash*, 7 id. 449; 2 Waite's Actions, 422; Waterman on Set-off, 267, 450, 455; *Hughes* v. *Trahern*, 64 Ill. 48; *Raleigh* v. *Raleigh*, 35 id. 513; *Scott* v. *Shreeve*, 12 Wheat. 605; *Gay et al.* v. *Gay*, 10 Paige, 369; *Doane* v. *Walker*, 101 Ill. 628.

Nor can an assignee of a non-negotiable instrument be considered an innocent purchaser entitled to protection, although he may have paid full value, and in good faith. *Parmely* v. *Buckley*, 103 Ill. 115; *Himrod* v. *Baugh*, 85 id. 435; *Tromer* v. *Railroad Co.* 95 id. 134; *Ellis* v. *Sisson*, 96 id. 105; *Bissell* v. *Curran*, 69 id. 20.

Mr. E. A. Sherburne, for the appellees:

We admit, as is said in *Greene* v. *Darling*, 5 Mason, 214, that when a chose in action is assigned, the assignee takes it subject to all the equities existing between the original par-

ties as to that very chose in action so assigned, but not that he takes it subject to all equities existing between the parties as to other debts and transactions.

The right of William C. Hickox in the contract set out in the bill to be paid individually for his services, was as distinct and separate from the joint rights of William C. and Joel M. thereunder, as if they had been put upon different papers. *Greene* v. *Darling*, 5 Mason, 214.

Where the legal interest and cause of action of covenantees are several, each may and should sue separately for the particular damage resulting to him individually, although the covenant be in its terms joint. (1 Chitty's Pleading, 11.) And when a joint covenantee may sue alone, he must sue alone. (Ibid. 9, note y; *Foley* v. *Addenbrook*, 4 Q. B. 197.) And a *bona fide* assignment of this covenant cut off any right to set off this judgment against it. *Howe* v. *Sheppard*, 2 Sum. 418; *Ullman* v. *Crane & Kline*, 87 Ill. 268; *Hughes* v. *Trahern*, 64 id. 48.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

Since the judgments sought to be set off are not between the same parties, it is clear there could be no set-off at law, and it devolves upon appellant, therefore, to show some equitable ground for being protected against the judgment of William C. Hickox. (*Raleigh et al.* v. *Raleigh*, 35 Ill. 512.) It is not enough, here, that appellant may have shown its rights were equal to those of I. B. Hickox; unless it has shown they were superior to any equitable claim which can be urged in his favor, appellant can not succeed. (*Holbrook* v. *Receivers*, 6 Paige, 231; *Hannon* v. *Williams*, (7 Stew.) 34 N. J. Eq. 255.) The allegation of the bill that I. B. Hickox had notice of the existence of appellant's judgment when William C. Hickox assigned his interest in the contract to him, is not only unsustained by the proof, but the reverse was affirmatively proven. William C. Hickox expressly testified that

I. B. Hickox had no such notice, and there was no other evidence upon the question. The question of whether I. B. Hickox was a purchaser for value, in the sense entitling him to protection as against any equities in favor of appellant, is also put at rest by the evidence of William C. Hickox, no countervailing evidence having been given. He testified that the assignment was made pursuant to a previous agreement, whereby I. B. Hickox agreed to pay him (William C.) $1100 therefor, and that of this amount $650 was paid before the assignment was made, and the balance was paid afterwards.

But was I. B. Hickox put upon notice of the equities of appellant by virtue of the terms of the contract assigned to him? At most that could but require him to know the terms of that contract, and the rights of the parties thereunder. It could not require him to know the terms of a different contract with other parties, and the rights of the respective parties thereunder. As was observed in *Greene* v. *Darling*, 5 Mason, 214: "Where a chose in action is assigned, it may be admitted that the assignee takes it subject to all the equities existing between the original parties as to *that very chose in action* so assigned. But that is very different from admitting that he takes it subject to all equities subsisting between the parties as to *other* debts and transactions."

It is quite true that the judgment obtained by appellant in the Supreme Court of New York was under a contract evidenced by a writing on the same piece of paper as that on which the contract assigned by William C. to I. B. Hickox, and under which the judgment obtained in the Cook circuit court was written; but it is not true that both judgments are under the *same* contract. In construing instruments of this character the question is, what interest was intended to be vested in the respective parties? And hence, "where the language of the covenant is capable of being so construed, it shall be taken to be joint or several, according to the interest of the covenantees." (Chitty on Contracts, (11th Am. ed.)

1343.) "The result of the cases," observed Lord Denman, Ch. J., in *Foley* v. *Addenbrook*, 4 Ad. & El. (N. S.) 197, (45 Eng. C. L. 197,) "appears to be, that where the legal interest and cause of action of the covenantees are several, they should sue separately, though the covenant be in joint terms." See note v, Chitty on Contracts, *ubi supra.* See, also, to like effect, 1 William's Saunders, 155; 1 Chitty's Pleading, *11, 10.

The contract under which the judgment in favor of appellant in the Supreme Court of New York was obtained, was with William C. Hickox and Joel M. Hickox, and it related entirely "to the closing of the business now existing between the Howe Machine Company, * * * and W. C. Hickox and J. M. Hickox." But the contract assigned by William C. to I. B. Hickox, and under which the judgment in the Cook circuit court was obtained, had nothing to do with the "closing of the business between the Howe Machine Company and W. C. and J. M. Hickox," but related exclusively to the employment of W. C. Hickox by the Howe Machine Company to sell machines within a designated territory, and during a stipulated time. There is not the slightest pretense for contending that J. M. Hickox was in anywise responsible for the conduct of W. C. Hickox in this regard, or entitled to participate in the profits he might thereby make. Two separate and wholly distinct subject matters were agreed to,— one, the closing up of an existing business, and the other, the carrying on of a new business. Had the agreements been written on separate papers, and separately signed, their disconnection would have been obvious to every intelligent apprehension. And yet the fact they are written on one piece of paper can make no difference. If, in the minds of the parties, they are separate and distinct in the one case,— and this is apparent from the language employed,—they must be so in the other. The only real difficulty is in arriving at the intention of the parties.

We see no cause to disturb the decree below. The case is not brought within any of the exceptions laid down in *Hughes* v. *Trahern, Admx.* 64 Ill. 48. See, also, *Ullman* v. *Kline et al.* 87 Ill. 268.

*Decree affirmed.*