## William R. Gibb, Appellee, v. Irving Park District, Appellant.

### Gen. No. 21,585.

1. PARTIES, § 14*—*when party to contract need not be joined as party plaintiff.* Where in one instrument there are embodied two distinct contracts, one between the defendant and the plaintiff, and another between the defendant and the plaintiff and another, the plaintiff may sue on the former without joining his cocontractor in the latter, inasmuch as the contracts are as independent, for purposes of suit, as though embodied in separate instruments.

2. MASTER AND SERVANT, § 11*—*what constitutes satisfactory services.* Where a contract provides that services to be performed must be satisfactory to the employer, such clause means that the services should be such that, as a reasonable person, the employer ought to be satisfied therewith.

3. ARCHITECTS AND ENGINEERS, § 16*—*when evidence sufficient to sustain judgment.* In an action to recover for architect's services in preparing plans for a field house, evidence *held* sufficient to sustain a finding and judgment for the plaintiff.

Appeal from the Municipal Court of Chicago; the Hon. JAMES C. MARTIN, Judge, presiding. Heard in this court at the October term, 1915. Affirmed. Opinion filed January 17, 1916. *Certiorari* denied by Supreme Court (making opinion final).

SPENCER WARD, for appellant.

TINSMAN & BLOCKI, for appellee.

MR. JUSTICE BAKER delivered the opinion of the court.

This is an appeal by the Irving Park District, a municipal corporation, from a judgment for $1,393.97 recovered against it by plaintiff Gibb for services as an architect in an action of the first class in the Municipal Court, which was tried by the court without a jury.

The contention that plaintiff cannot recover because the contract was by its terms between the plaintiff and Anderson, parties of the first part, and the defendant, party of the second part, cannot be sustained.

Two separate and wholly distinct subject-matters were agreed on—one the provision for all services except superintendency by Gibb, and the other the superintendency by Anderson under the supervision of Gibb. In *Howe Mach. Co. v. Hickox,* 106 Ill. 461, it was held that under a similar instrument there were two distinct contracts—one with A. and B., the other with B.—as much so as if written on separate papers, and that A. and B. should sue separately.

Where a contract provides that services to be performed must be satisfactory to the employer, such clause means that the services should be such that as a reasonable person the employer ought to be satisfied therewith. *Keeler v. Clifford,* 165 Ill. 544.

The contract did not fix or limit the cost of the field house for which Gibb was employed to draw plans. Plaintiff was employed as an architect by the board before February 5, 1912, and that day submitted to the board plans of a field house, with a showing that the approximate cost thereof would be $54,500. The members of the board suggested that he draw plans for a field house to cost $40,000, but afterwards they made repeated changes in the proposed field house, and plaintiff kept telling them that with such changes the field house would cost more than $40,000. Among the changes so suggested was to have two locker rooms in place of one. When told to prepare plans for a field house to cost $40,000, plaintiff asked if the board wanted an assembly hall and was told that they did not. Then President Ott told plaintiff that some of the ladies of the Club said they could not have a field house without an assembly hall; that such hall was one of the most essential things to have, and the president said they would have to have an assembly hall, and plaintiff included such hall in the new plans. This required the second story to be eighteen feet high in place of ten feet. President Ott testified that mem-

bers of the board visited other field houses, and each member noticed something about those field houses that he would propose and the architect subsequently incorporated such suggestion in the sketch he was to submit at the next meeting. He told the board that with the changes suggested the field house could not be built for $40,000 nor for $45,000, but would cost in the neighborhood of $50,000. Before the contract was made Gibb told the board that his estimate of the cost of the building according to the sketches was $54,500. He asked for bids, by direction of the board, and the lowest bids amounted to $55,917. August 26th the board resolved that because of the high figures of the bids all bids should be rejected, and the plaintiff was instructed to prepare plans for a field house to cost approximately $40,000. Plaintiff made changes in the plans which would reduce the cost of the field house to approximately $48,000, and submitted such plans to the board September 27, 1912. The board was dissatisfied with the plans so submitted and stated they preferred the old plans; that a field house built according to such plans would have more the appearance of a factory, garage or livery stable, and was not at all what the board wanted. President Ott testified that the board made a contract with another architect in the fall of 1912 to prepare plans for and superintend the construction of the field house. November 18th, Gibb presented to the board a bill for $1,393.97 for services in making plans, specifications and details for a field house and taking estimates on same, and December 2, 1912, the board instructed its secretary to notify Gibb that the board denied any liability under his bill of November 18th.

It is not disputed that the reasonable value of plaintiff's services was equal to or greater than the amount of the recovery, and we think that from the evidence the court might properly find the issues for the plaintiff, and the judgment is affirmed.

*Affirmed.*